[Civil No. 775.   Filed March 18, 1902.]

[68 Pac. 529.]

# L. C. SHATTUCK, Plaintiff and Appellant, v. MARTIN COSTELLO, Defendant and Appellee.

1. MINES AND MINING—ACTION TO QUIET TITLE—PLEADING—GENERAL DENIAL—CROSS-COMPLAINT—FINDINGS.—In a suit to quiet title to a mining claim, the defendant having answered denying the validity of the plaintiff's location, and by way of cross-complaint having asked that his title to a conflicting location be quieted as against plaintiff, it is the duty of the court to determine the validity of defendant's claim as well as the plaintiff's although the latter only would need to be determined under a general denial.

2. FINDINGS OF FACT—UPON GENERAL DENIAL—UPON CROSS-COMPLAINT —GENERAL FINDING IN FAVOR OF DEFENDANT INSUFFICIENT.— Where a defendant merely denies the allegations of plaintiff's complaint a general finding for the defendant will be sufficient; but where the defendant sets up a cross-complaint, and asks for affirmative relief based upon the facts set up in the cross-complaint, a general finding for the defendant is not sufficient, but there should be a special finding of fact upon the cross-complaint upon which a judgment can be founded.

3. SAME — SUFFICIENCY — UPON CROSS-COMPLAINT — ACTION TO QUIET TITLE—REV. STATS. ARIZ. 1901, PAR. 1406, CONSTRUED.—The statute, *supra*, requires that "In all cases where a trial of an issue of fact is held by the courts of record . . . the decision of the court shall be in writing . . . and the facts found and the conclusions of law shall be separately stated . . . and judgment . . . entered accordingly." In an action to quiet title to a mining claim, defendant alleging a conflicting location and asking that title be quieted, a finding upon the issues of fact that "the court finds in favor of defendant and against plaintiff, and that the allegations of defendant's cross-complaint are true," is insufficient to support a judgment quieting defendant's title to the premises, but full findings of fact should be made.

4. MINES AND MINING—LOCATION—VALIDITY—ACTION TO QUIET TITLE— EVIDENCE—BURDEN OF PROOF.—Where both parties claim certain property as a mining claim, and both seek to have their title quieted, each claiming under a relocation, the burden is on each party to prove the validity of his location, the duty of taking the initiative in such proof resting upon the plaintiff.

5. SAME—SAME—SAME—DESCRIPTION—BOUNDARIES OF ANOTHER CLAIM —MONUMENTS.—To name mining claims as the boundaries of a

location is such a reference to natural objects and permanent monuments as to comply with the statute.

6. SAME—SAME—SAME—SAME—PRESUMPTIONS—EVIDENCE—BURDEN OF PROOF.—Where mining claims are used in a location notice to designate the boundaries of a claim, the presumption is that such objects exist, and the duty to show that they do not exist is cast upon the disputing party.

7. SAME—ACTION TO QUIET TITLE—RELOCATION—VALIDITY—PRIOR LOCA· TION.—The evidence in an action to quiet title to a mining claim reviewed and held to show that at the time of defendant's location the ground was covered by an existing valid location, and therefore not open to relocation.

8. SAME—SAME — SAME — SAME — SAME — EVIDENCE — ADMISSIONS — PREMATURE LOCATION.—Defendant located a mining claim on December 12, 1895. On January 1, 1896, plaintiff located the same claim. Suit having been brought to quiet title, and the issue being whether a prior location was existing at the time of defendant's location, thereby rendering said location invalid, evidence was introduced showing that on January 27, 1900, defendant filed location notices upon the ground in dispute, declaring that they constitute a ''relocation of the ground formerly located by unknown parties and abandoned in 1895 or 1896.'' *Held,* that such filing stands in the nature of an admission by defendant that his location of December 12, 1895, was premature.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. George R. Davis, Judge. Reversed. Dismissed on rehearing, *post,* p. 255.

The facts are stated in the opinion.

Barnes & Martin, for Appellant.

The ground covered by the Henrietta, Triangle, and Leo claims is substantially the same ground. The Henrietta was located in 1893, and was a good, valid, and subsisting location up to December 31, 1895.

The discovery work and discovery monument of the Leo is within the boundaries of the old Henrietta, and at the date of the Leo location, December 12, 1895, it was not open ground, and therefore the Leo location is void. *Belk* v. *Meagher,* 104 U. S. 279, 26 L. Ed. 735; *Armstrong* v. *Lower,* 6 Colo. 631; *Faxon* v. *Bernard,* 4 Fed. 705; *Gwilliam* v. *Donnellen,* 115 U. S. 45, 5 Sup. Ct. 1110, 115 L. Ed. 348; *Golden*

*T. Co.* v. *Smith,* 2 Dak. 374, 11 N. W. 97; *Harrington* v. *Chambers,* 3 Utah 94, 1 Pac. 362.

On an adverse suit it should be determined whether or not either party has a right to the land in controversy, and mere failure to make out a case on the part of one of the litigants does not relieve the other from showing his title. *Steel* v. *Gold Lead etc. Co.,* 18 Nev. 80, 1 Pac. 448; *McGinnis* v. *Egbert,* 8 Colo. 41, 5 Pac. 653; *Hammer* v. *Garfield M. etc. Co.,* 130 U. S. 291, 9 Sup. Ct. 548, 32 L. Ed. 964; *Lee Doon* v. *Tesh,* 68 Cal. 43, 6 Pac. 97, 8 Pac. 621; *Rosenthal* v. *Ives,* 2 Idaho, 244, (265), 12 Pac. 904; *Anthony* v. *Jillson,* 83 Cal. 296, 23 Pac. 419; *Becker* v. *Pugh,* 17 Colo. 243, 29 Pac. 173; *Manning* v. *Strehlow,* 11 Colo. 451, 18 Pac. 625; *Jackson* v. *Roby,* 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; *Gwilliam* v. *Donnellen,* 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348; *Wolverton* v. *Nichols,* 119 U. S. 485, 7 Sup. Ct. 298, 30 L. Ed. 474.

While Costello claims under his Leo location of December 12, 1895, his subsequent action of relocating the same ground, and reciting it to be a relocation of ground formerly located by unknown parties and abandoned in 1895 or 1896, is not only an admission that his pretended location of 1895 was not good, but it is a solemn admission that the Moore location of the Henrietta was a valid one. *Belk* v. *Meagher,* 104 U. S. 279, 26 L. Ed. 735; *Wills* v. *Blain,* 4 N. Mex. 378, 20 Pac. 798.

Where a statute like ours requires the court to state separately all the facts found and the conclusions of law, the failure of the court to do so is reversible error. Finding under such a statute is in the nature of a special verdict, and without finding such facts there is no basis for the support of the judgment. *Stanzell* v. *Corning,* 21 Mich. 244; *Hogaland* v. *Clarey,* 2 Cal. 471.

The findings of the court should consist of a concise and distinct written statement, in its proper order, of each specific fact found. *Emeric* v. *Alvarado,* 64 Cal. 529, 2 Pac. 418; *Goodnow* v. *Griswold,* 68 Cal. 600, 9 Pac. 837; *Bahnsen* v. *Gilbert,* 55 Minn. 334, 56 N. W. 1117.

And the findings must support the judgment. As to the rule in adverse cases, see *Larkin* v. *Upton,* 144 U. S. 19, 12 Sup. Ct. 614, 36 L. Ed. 330; *McTarnahan* v. *Pike,* 91 Cal. 540, 27 Pac. 784; *Gelcich* v. *Moriarity,* 53 Cal. 217; *Pralus* v.

*Pacific Gold etc. Co.*, 35 Cal. 30; *Butte Hardware Co.* v. *Cobban*, 13 Mont. 351, 34 Pac. 24.

James Reilley, and Ben Morgan, for Appellee.

STREET, C. J.—Appellee Martin Costello filed his application in the land office for a patent to the Leo mining claim, and within the sixty days Francis A. Ovens and L. C. Shattuck filed an adverse, and brought their action in the district court of Cochise County. They set up their title to the Triangle mining claim, and allege that 7.91 acres of the Leo claim overlap the Triangle claim. The Triangle claim being a prior location, they ask that their title to the ground in conflict be quieted, and be declared to be in them, the plaintiffs. The defendant, Costello, answered, denying the validity of the Triangle claim, and, as a cross-complaint, set up the location of the Leo mining claim, praying that he be entitled to the possession of all the Leo mining claim as described in his location notice; and that he be entitled to a patent from the United States, and that his claim be quieted as against the claim of plaintiffs' asserted right to the Triangle claim. The cause was tried to the court, and defendant, Costello, had judgment against L. C. Shattuck upon the following findings of fact: "The court finds from the evidence that the plaintiff Francis A. Ovens died some time during the year 1898, before the commencement of this suit, and before the adverse claim made in plaintiff's complaint was filed in the United States land office in Tucson. As between the plaintiff L. C. Shattuck and the defendant, Martin Costello, upon the issues of fact the court finds in favor of the defendant and against said plaintiff, and that the allegations of defendant's cross-complaint are true." Numerous assignments of error were made, all of which, in effect, were that the findings of fact and the judgment were contrary to the evidence, and also that the findings of fact were too general to base a judgment upon.

The statute provides that "In all cases where a trial of an issue of fact is held by the courts of record of the territory, the decision of the court shall be in writing, and filed with the clerk within thirty days after the trial takes place. In giving the decision the facts found and the conclusions of law shall be separately stated. Judgment upon the decision shall

be entered accordingly.'' Rev. Stats. 1901, par. 1406. As
the issues were made up, it was within the power of the court
to find for the appellants, supporting the Triangle claim, or
for the appellee, supporting the Leo claim, or for the govern-
ment, not supporting either of said claims. Had the trial
been upon issue raised by general denial, the court would not
have been compelled to pass upon the claim of appellee, and
the issue would have been only as to the validity of the Tri-
angle claim, and the right of the owners thereof to maintain
the same against the government; but, the appellee having
set up the Leo claim, and asked for an adjudication of his
right to that claim and to a patent therefor, it became the
duty of the court to determine the validity of that claim as
well as the Triangle claim. Where a defendant merely denies
the allegations of plaintiff's complaint, a general finding
for the defendant will be sufficient; but where the defendant
sets up a cross-complaint, and asks for affirmative relief based
upon the facts set up in the cross-complaint, a general find-
ing for the defendant is not sufficient, but there should be a
special finding of fact upon the cross-complaint upon which
a judgment can be founded. The judgment adjudged ''that
the defendant, Costello, is the owner of and entitled to the
possession of the Leo mining claim, as described in his re-
corded notice of location thereof, dated December 12, 1895,
and in his cross-complaint in this suit, as follows, to wit.''
Then follows the description, etc. ''And it is further or-
dered, adjudged, and decreed that the title and right of pos-
session of said defendant, Martin Costello, to the said Leo
mining claim is forever quieted and confirmed as against the
plaintiff L. C. Shattuck,'' etc. The judgment goes far be-
yond the findings so prepared. Under the statute, and under
defendant's cross-complaint, if the court found in favor of
the cross-complaint, full findings of fact should have been
prepared and signed, upon which a judgment could have been
based. But appellant's assignments of error go further, and
say that the findings of fact are unsupported by the evidence,
or against the weight of evidence; which leads us into an
investigation of the evidence, for, if we should find that the
evidence did not present a substantial conflict, but was clearly
of such import as to properly support findings in favor of
the plaintiffs instead of the defendant, it would be the duty
of this court to reverse the judgment.

The Triangle location, claimed by appellants, was located on the first day of January, 1896; the Leo mining location, claimed by appellee, was located on the twelfth day of December, 1895. It is conceded that there is a conflict between the locations to the extent of the 7.91 acres of ground in dispute, but the chief contention between the parties is whether the ground located by appellee on the twelfth day of December, 1895, was at that time open to location; for if the ground was open to location at that time, it is plain that the Leo was a prior location to the Triangle. The dispute centers around a mining claim called the "Henrietta," alleged by the appellants to have been located by S. D. Moore, April 2, 1893, and the ground covered thereby was not open to relocation until the first day of January, 1896, when appellants located it. Both the appellants and the appellee, in proving the validity of their respective mining locations, would have to show that the ground was mineral land open to location, and, if any prior location covered the same ground at the time of either of the locations, such subsequent locations would be void; so the burden of proving the validity of the Triangle location and the validity of the Leo location was cast upon each respectively. It is admitted that the ground covered by each location is mineral ground, but there are no admissions as to the validity of the Henrietta mining claim. It became the duty of the appellants to take the lead in such proof. The description in the location notice of the Henrietta mining claim describes it as located one mile south of the town of Bisbee, and bounded on the north by the Uncle Sam mining claim, on the west by the Iron Prince mining claim, on the south by the Jeff Davis mining claim, on the east by the Tip Top and Woodchopper mining claims. To name mining claims as the boundaries of a location is such a reference to natural objects and permanent monuments as to comply with the statute. The presumption is that such objects exist, and the duty to show that they do not exist is cast upon the disputing party. It is in evidence, however, that the Woodchopper mining claim is a patented mining claim belonging to the Copper Queen Company. Shattuck, in his testimony, says he was acquainted with the ground in dispute; that he had been on it several times; that he knew that Dr. Moore had a claim there, and he knew he had not done his assess-

ment work in 1895, but had done it in 1894; that Dr. Moore had shown him all the monuments, and that he knew them very well; that Moore had taken him all around the claim, and had wanted him to buy in it, and had shown him his lines and monuments; that Moore abandoned the claim in 1895; that he tried to get Shattuck to take all the claims and do the assessment work for a half interest, saying that he was going to allow them to run out in 1895; that Moore did not do any assessment work in 1895, and told witness he was going to abandon it; that the name of the claim was the Henrietta. Witness testified that the Triangle claim is inside of the boundaries of the Henrietta claim; that the Henrietta was too big a claim to come out right; that all the Triangle claim was inside the boundaries of the Henrietta; that he knew the Uncle Sam, the Iron Prince, the Jeff Davis, the Tip Top, and the Woodchopper mining claims, and described how the Henrietta was located in reference to them, as Moore showed him the monuments of the Henrietta. Witness also described the location of the Henrietta monuments in reference to the Triangle monuments. He also said he knew the claim on the ground called the "Leo," and knew the monuments there; that he had seen them; that he was with the surveyor when he surveyed for a patent for the Leo; that he knew the discovery shaft of the Leo on the ground, and that the discovery monument was within the boundaries of the Triangle claim; that he saw the location notice in the monument. Witness also drew on the blackboard a diagram of the Henrietta, the Triangle, the Iron Prince, the Uncle Sam, and the Woodchopper claims, which showed the Triangle and the Henrietta claims to be substantially the same, the Triangle lines coming within the boundaries of the Henrietta. Witness testified that the Henrietta claim joins the end of the Woodchopper claim, but did not quite strike the side lines of the Uncle Sam claim; that Moore had taken him upon the ground two or three different times, wanting him to buy in with him, and at such times showed witness the monuments. Witness testified that he saw the work being done on the Henrietta in 1894; that when Ovens located the Triangle claim he knew that the Henrietta had been a location, and that Ovens was locating nearly the same ground, and that it was located for the reason that the assessment work had not been done for

1895; that he knew Ovens was a citizen of the United States, and witness had known him for many years; had known Ovens voted at the elections in Arizona; that witness knew Moore was a citizen of the United States; that Moore had told him that he was born in Illinois; that he knew him to be an army doctor and an army surgeon; that Moore was in the territory twelve years, at Bisbee, and practiced medicine there. John Pirrung, a witness, testified that he knew the ground covered by the Iron Prince, the Standard, the Roy, the Triangle, and the Woodchopper claims, and the boundaries of the Triangle claim; that he first knew the Triangle claim in January, 1896; that the ground covered by the old Henrietta claim was located about three or four years prior to the Triangle claim; that Moore claimed to be the owner of the Henrietta; that witness saw a notice of the Roy location inside of the Triangle ground, signed by Martin Costello as the locator and Pat Cunningham as witness, dated December, 1895. George Hill, a witness, testified that he knew the ground included within the location of the Triangle; that he was up there in January and February, 1896; that he went up there to show Dolan a monument on the Standard; that witness saw location notice of the Roy, signed by Costello and Cunningham, inside of the lines of the Triangle. J. A. Rockefeller, a witness, testified that he was a surveyor, and had surveyed the claims known as the "Leo" and the "Roy," and attempted to re-run the old lines of the Henrietta. Witness produced a map, and pointed out monuments of the Leo and the Roy. He testified that he found the center end of the Leo marked in a corner of the Woodchopper claim; that there was a monument of the Tip Top, and it was also marked the Leo and the Roy; that he found a corner of the Leo marked on the center end of the Woodchopper, and in making the official survey the end lines would not be parallel, and he drew the corner in some ninety or ninety-one feet from this point on the line between this corner and this center end of the Woodchopper, which was scribed for the corner of the Leo. In describing further the monuments, witness said, pointing on the map: "I found a location corner probably fifteen feet out from the corner that I established,—that is, corner number three,—just as in the other case, in order to make the claims parallel, and make the claims symmetrical."

Witness gave full descriptions of lines which he ran, all tending to show that the Leo and the Triangle covered the same ground as had been covered by the Henrietta. Defendant, in offering evidence in support of his claim, and in opposition to the offer made by plaintiffs to support their claim, nowhere produced such evidence as would show that the Henrietta had never been a mining claim or a valid location, nor did he show that the assessment work had not been done in 1894.

The result of the evidence produced by the respective parties leads to the conclusion that the Henrietta mining claim was an existing, valid location up until the close of the year 1895; that when Costello made the location of the Leo, December 12, 1895, the ground was not open to relocation, and he could not initiate any rights at that time. No one could initiate a right by an attempted location before January 1, 1896, which was the date of plaintiffs' location. The evidence in regard to these conflicts is not as clear and as distinct as one could desire, but, if the Henrietta is to be regarded as a valid, existing claim (and upon that point we have no doubt), then the evidence more strongly shows that it was a valid, existing claim on the twelfth day of December, 1895, and included ground which is the subject of this conflict, than that it was abandoned or forfeited before 1895. The evidence of witnesses in those particulars, taken in connection with evidence that location notices bearing Costello's name had been recorded for the Leo ground, dated on the twenty-seventh day of January, 1900, with the declaration, ''This is a relocation of the ground formerly located by unknown parties, and abandoned in 1895 or 1896; name of former location unknown,'' leads to the conclusion that the location of January 27, 1900, was the act of the former locator of the Leo for the purpose of strengthening his right to his earlier location. It stands in the nature of an admission by Costello that the location of December 12, 1895, was premature.

The judgment of the district court is reversed, and case is remanded to district court for new trial.

Sloan, J., and Doan, J., concur.