## LOCKHART v. FARRELL.

No. 1720. Decided September 29, 1906 (86 Pac. 1077.).

1. MINES AND MINERALS—PUBLIC MINERAL LANDS—LOCATION. A discovery of a vein or lode on unoccupied and unappropriated mineral lands of the United States, is a prerequisite to a valid location of a mining claim.[1]

2. SAME—RELOCATION—VALIDITY. A location of a mining claim based on a discovery within the limits of an existing and valid location is void.[2]

3. SAME. A relocation of a mining claim on lands actually covered by another valid location is void, not only against the prior locator, but all the world, and what has been located once cannot be relocated until the first location has expired by the rights of the former locator coming to an end.

[1] Reynolds v. Jascoe, 24 Utah 219, 66 Pac. 1064.
[2] Watson v. Mayberry, 15 Utah 265, 49 Pac. 479.

4. SAME. Where a forfeiture of the location of a mining claim has been occasioned, the claim on which the failure occurred is open to relocation in the same manner as if no location had ever been made, providing the original locator has not resumed work on the claim after failure and before relocation.

5. SAME. A location of a mining claim must be good when made, and each claimant must stand on his own location and can take only what it will give him under the law.

6. SAME. A person who located a mining claim based on a discovery within the limits of an existing location located by another, which was subsequently forfeited for nonperformance of the actual labor and development work required by law, was a trespasser, and his location was void *ab initio*, and the subsequent forfeiture did not assist him in acquiring any right.

7. SAME—PRESUMPTIONS. On an application for a patent to a mining claim located by the applicant, the land office, in the absence of the filing of an adverse claim, will indulge the presumption that no conflicting claims exist to the premises described in the application, but when an adverse claim is filed, the presumption does not arise.

8. SAME—BURDEN OF PROOF. Defendant located a mining claim, and and applied for a patent thereto. Plaintiff adversed the application, claiming the right to the possession of the same as claimant, and brought an action pursuant to Rev. St. U. S., section 2326 (U. S. Comp. St. 1901, p. 1430), to adjudicate the adverse claims. *Held*, that as the court was entitled to presume that defendant's location prior in time, had prima facie the better right, plaintiff had the burden of rebutting the presumption by showing the invalidity of the prior location.

9. SAME—EVIDENCE. Plaintiff was entitled to show that at the time of the location of defendant's claim its discovery point was located within the limits of an existing and valid location of another, so that the ground was not at the time subject to location.

Appeal from District Court, Summit County; T. D. Lewis, Judge.

Action by James M. Lockhart, administrator of John G. Rhodin, deceased, against James Farrell. From a judgment for defendant, plaintiff appeals.

REVERSED AND REMANDED.

*Snyder & Snyder* for appellant.

*Dey & Stevens* for respondent.

APPELLANT'S POINTS.

The South Mountain was located August 21, 1900, and the owners were not required to do any assessment work thereon, until 1901, and had the whole of that year in which to do it. (R. S. U. S., 2324; Act June 22, 1880, 21 Stat. L., p. 61.) It was not, therefore, open to location until the prior claim was extinguished, and any attempt to so locate would be wholly nugatory and void. (*Belk v. Meagher,* 104 U. S. 279; *Book v. Justice M. Co.,* 58 Fed. 106-28; *Malone v. Jackson,* 137 Fed. 878; *Hall v. Hale,* 8 Colo. 351, 8 Pac. 580; *Shattuck v. Costello,* 68 Pac. 529; *Slavonian M. Co. v. Perasich,* 7 Fed. 331.)

"No location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim." (R. S. U. S., sec. 2320; *Mining Co. v. Allman,* 23 Utah 410-18; *Harrington v. Chambers,* 3 Utah 94; *Hayes v. Lavignino,* 17 Utah 185, 190-97; *King v. Amy, etc., Co.,* 152 U. S. 225; *Erhardt v. Boaro,* 113 U. S. 527; 1 Lindl., Mines, sec. 335 and cases; *Perigo v. Erwin* [Utah], 85 Fed. 904.)

"A mining claim perfected under the law is property in the highest sense of that term." (*Forbes v. Gracey,* 94 U. S. 767; *Belk v. Meagher,* 104 U. S. 279.)

"The location of a mining claim is void when its discovery point is placed within an existing valid claim." (*Watson v. Mayberry,* 15 Utah 265; *Reynolds v. Pascoe,* 24 Id. 219; *Eilers v. Boatman,* 3 Id. 159; *Belk v. Meagher,* 104 U. S. 279; *Gwillim v. Donnellan,* 115 U. S. 45; *Upton v. Larkin,* 7 Mont. 449, 17 Pac. 728; *Perigo v. Erwin,* 85 Fed. 904.)

No legal right can be created which depends for its validity upon a trespass. (*Atherton v. Fowler,* 96 U. S. 513; *Eilers v. Boatman,* 3 Utah 159.)

"Before there can be a relocation there must be a forfeiture." (*Belk v. Meagher,* 104 U. S. 279; Lindl., Mines, secs. 363, 402, 408; Barringer & Adams, Mines, p. 306.) Before there can be a relocation there must be an ending of the previous claim. (*Zerris v. Vanina,* 134 Fed. 610, 614; *Omar*

v. *Soper,* 18 Pac. 448; *Little Gunnel M. Co. v. Kimber,* 1 Morr. M. R. 536; *Lakin v. Sierra Buttes Co.,* 25 Fed. 337; *Beals v. Cone,* 62 Pac. 948; *Lacey v. Woodward,* 25 Pac. 785; *McKay v. McDougall,* 64 Pac. 669; *North Noonday M. Co. v. Orient M. Co.,* 1 Fed. 522.)    This court agrees with this.    (*Klopenstein v. Hays,* 20 Utah 45; *Justice M. Co. v. Barclay,* 82 Fed. 554.)

STRAUP, J.

The respondent applied for patent to the Cliff lode mining claim located by him August 1, 1901. The appellant adversed the application, claiming the right to the possession of the same ground as owner and claimant of the Divide lode mining claim located by his intestate January 2, 1903.    This action was brought pursuant to section 2326, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1430], to adjudicate these adverse claims.    Upon findings made by the trial court a judgment was entered for the respondent, decreeing to him the possession of the ground.    On the trial, the appellant offered evidence tending to prove that at the time of the location of the Cliff claim the ground so located and in controversy was covered by a prior valid and subsisting location called the "South Mountain," located by W. I. Snyder and Thomas Roscamp on August 21, 1900, but which became forfeited December 31, 1901, for nonperformance of the annual labor and development work required by law; and that no adverse claim was filed in behalf of the South Mountain against the application for patent.    This evidence was received by the court subject to the objection that it "was incompetent, irrelevant, and immaterial, and that no adverse claim was filed on behalf of the South Mountain."    The court specifically found "that the said Cliff, Divide, and South Mountain claims, as located, cover substantially the same ground, and that the place of discovery of said Cliff lode mining claim was within the boundaries of said alleged South Mountain mining claim."

There being no adverse filed on behalf of the South Mountain claim, the decisive question is whether the appellant, as

owner of the Divide Claim, who, as such, adversed the application for patent, is in position to show and assert that at the time of the location of the Cliff claim the ground located was covered by the South Mountain, a then valid and subsisting claim; that the discovery point of the Cliff was within the boundaries of the South Mountain; and that, therefore, the locator of the Cliff did not discover a vein or lode on, or make a valid location of, unappropriated and unoccupied mineral lands of the United States, and because thereof his location is and was void not only against the locators of the South Mountain, but all the world. The following propositions may be said to be well established and generally recognized: (1) That a discovery of a vein or lode on unoccupied and unappropriated mineral lands of the United States is a prerequisite to a valid location of a mining claim. (2) That a location based upon a discovery within the limits of an existing and valid location is void. (3) That what has been located once under the law shall not be relocated until the first location has expired, until the rights of the former owner or locator have come to an end, and until in law he has forfeited or abandoned his claim and left the property open for another to take up. Until such abandonment or forfeiture the ground is not subject to relocation, for it is essential that at the time of the location the ground located should be a part of the public domain. Hence, a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done. (4) That when a forfeiture has been occasioned the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs or assigns, or legal representatives, have not resumed work upon the claims after failure and before such location. (5) that a location to be good must be good when made, and that each claimant must stand on his own location and can take only what it will give him under the law. These propositions are readily deducible from sections 2319, 2320, 2322, and 2324, Rev. St. U. S. [U. S. Comp. St. 1901, pp. 1424 to

1427], and are supported by decisions from both federal and state courts, and by the text-writers. Among them may be noticed the following: *Belk v. Meagher,* 104 U. S. 279, 26 L. Ed. 735; *Gwillim v. Donnellan,* 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348; *Zerres v. Vanina* (C. C.), 134 Fed. 610; *Book v. Justice Min. Co.* (C. C.), 58 Fed. 106; *Perigo v. Erwin* (C. C.), 85 Fed. 904; *Sullivan v. Sharp* (Colo. Sup.), 80 Pac. 1054; *Kirk v. Meldrum,* 28 Colo 453, 66 Pac. 1054; *Kirk v. Meldrum,* 28 Colo. 453, 66 Pac. 633; *Tuolumme Consol. M. Co. v. Maier,* 134 Cal. 583, 66 Pac. 863; *Quigley v. Gillet,* 101 Cal. 462, 35 Pac. 1040; *Wilson v. Freeman,* 29 Mont. 470, 75 Pac. 84, 68 L. R. A. 833, and notes; *Upton v. Larkin,* 7 Mont. 449, 17 Pac. 728; *Shattuck v. Costello* (Ariz.), 68 Pac. 529; *Jordan v. Duke* (Ariz.), 53 Pac. 197; *Beals v. Cone* (Colo. Sup.), 62 Pac. 948; *Watson v. Mayberry,* 15 Utah 265, 49 Pac. 479; *Reynolds v. Pascoe,* 24 Utah 219, 66 Pac. 1064; 1 Snyder on Mines, sec. 572, 573; 1 Lindley on Mines (2 Ed.), secs. 337, 363.

It, however, in effect, is urged by the respondent that the above propositions, if true, would apply only in a contest between the owners of the South Mountain and the Cliff, had the former not forfeited their claim, and had they adversed the application for patent. In other words, the assertion is made that under such circumstances the location of the Cliff would be invalid as to the owners of the South Mountain claim, but by their failure to adverse the application for patent the Cliff location is valid as to all the world because of an alleged indisputable presumption that no area in conflict between the South Mountain and the Cliff claims ever existed, or, if it existed, whatever paramount rights possessed by the owners of the South Mountain, in effect, inured to the benefit of the owner of the Cliff. Hence it is argued that the owner of the Divide is not in position to show or assert that the Cliff, when located, was upon ground then covered by the South Mountain, a then valid and subsisting claim, or that the discovery point of the Cliff was within the boundaries of the South Mountain. In support of this contention the case of *Lavagnino v. Uhlig,* 198 U. S. 443, 25 Sup. Ct.

716, 49 L. Ed. 1119, is cited and relied on. We think that case does not decide the question here presented, and does not support the contention of the respondent. There the court dealt with the question of a mere conflict area, a case of overlapping claims between a senior and a junior location predicated on the hypothesis that both were valid locations. The statement of facts on which the opinion was based are, that Uhlig and McKernan applied for patent to mining lode claims known as the "Uhlig No. 1" and "Uhlig No. 2," located by them January 1, 1899. Lavagnino filed an adverse claim on behalf of the Yes You Do mining claim, located by Smith, a deputy mineral surveyor, who thereafter assigned the claim to Lavagnino. It was alleged that the Uhlig claims overlapped the Yes You Do, and that the area in conflict, as to Uhlig No. 1, was six and a fraction acres, and, as to Uhlig No. 2, one and a fraction acres. Suit was brought by Lavagnino against the applicants for patent to determine the right of possession to the area in conflict. At the trial Lavagnino offered to show that when the Uhlig claims were located the area in conflict was covered by a valid and subsisting claim called the "Levi P." The trial court sustained an objection to such proffered evidence, on the theory that the Yes You Do claim was void because located by a deputy mineral surveyor, who, it was held by reason of section 452, Rev. St. U. S. [U. S. Comp. St. 1901, p. 257], was prohibited from making a valid location of a mining claim, and, therefore, Lavagnino had no interest in the subject-matter of the controversy, and, having no title upon which to base an adverse claim, he stood in relation to the proceedings as a mere stranger, and was, consequently, not in a position to assail the title of the applicants. The trial court decreed to the applicants the possession of the ground described within the boundaries of their claims. On appeal to this court that judgment was affirmed on the ground taken by the trial court, and further, because of the bar of the statute of limitations. On appeal to the Supreme Court of the United States the judgment of the trial court was again affirmed—the court assuming, without deciding, that a deputy

31 Utah—11

mineral surveyor was not prohibited from making a valid location of a mining claim—on the theory that, as to a mere conflict area between the Levi P., the senior claim, and the Uhligs, the junior claims, an indisputable presumption arose that no conflict existed by failure of the owner of the prior location to adverse the application for patent, or that whatever paramount right was possessed by him, in effect, inured to the benefit of the junior location.    The whole tenor of the opinion, however, shows that the court assumed that the Uhlig claims were valid locations, and that their boundaries merely conflicted with the boundaries of the Levi P.    This is apparent from the very beginning of the opinion, by the court's adopting the finding of the trial court that the Uhlig claims were valid locations.    That is to say, it was necessarily assumed, among other things requisite to a valid location, that the locators of the Uhlig claims discovered a vein or lode not within the boundaries of a then valid and subsisting claim, but upon unoccupied mineral lands of the United States, and that their claims, as located and defined by them, merely conflicted with the boundaries of the Levi P., the senior location, without involving the discovery points of any of the claims.    And upon this assumption, it was held that when the junior locators applied for patent the senior locator, possessed of paramount rights to the areas in conflict, might abandon them, and, in effect, cause them to inure to the benefit of the applicants for patent by failure to adverse. From the statement of facts, as made by Mr. Justice White, and upon which the opinion was predicated, there is no room for the assertion that the discovery points of the Uhlig locations, when made, were within the boundaries of the Levi P., a then valid and subsisting claim.    In that respect the status of the parties in the case at bar is wholly different.    When the respondent located the ground then covered by the South Mountain, a valid and subsisting claim, he did that which the law forbids.    Hence, his location was not only void as to the locators of the South Mountain, but void *ab initio* as to all the world.    He did not do that which the law declares shall be done as a prerequisite to a valid location, make a dis-

covery of a vein or lode on unoccupied mineral lands of the United States, but he was a mere trespasser seizing that which then belonged to another. When the locators of the South Mountain thereafter forfeited their claim, their rights could not in any manner inure to his benefit, for he had not acquired anything to which such rights could attach. That is to say, he had no valid location of any kind to which a mere area in conflict with another and a senior claim could be surrendered or made to inure by virtue of his location. His location, being absolutely void, no act thereafter done by the prior locators, or by any one else, could confer validity upon it. Being void from the beginning, no life could thereafter be breathed into it. No legal right can be created which is dependent upon a trespass or a tortious entry for its validity. If this proposition is sound, upon what principle of law shall it now be said that the plaintiff, as the owner of the Divide, is not in position to show and urge such invalidity of respondent's location? Because the owners of the South Mountain thereafter forfeited their claim and failed to adverse, and were not in a position to adverse because having no claim upon which to base such action and consequently could not assail respondent's title, shall it now be said that another, who asserts a claim to the ground in controversy on a location made by himself and upon which his right to adverse is based, is precluded from asserting such invalidity? To so hold is to make the claimants' rights to the possession of the ground dependent solely upon the question of priority of location. To such doctrine we cannot give assent. Suppose respondent had located mineral land when it was within a reservation and not subject to location, and, after it had been opened to location, the appellant had located the same ground; could it be said that the respondent had the better right to its possession because of his prior location? Would it not at once be said that his location was absolutely void, and that no right had been acquired by him, and that, in a contest between himself and appellant, respondent's attempted location would be no obstacle to a valid location of the ground made by appellant after it had been opened

to the public, and become subject to location? In such case respondent's location would be a nullity and just as if it had never been made. (*Kendall v. San Juan Silver M. Co.*, 144 U. S. 658, 12 Sup. Ct. 779, 36 L. Ed. 583.)

In the case at bar, it is true that had no adverse claim been filed, the Land Office would have indulged the presumption that no conflicting claims existed to the premises described in the application for patent, but when an adverse claim was filed by the appellant such presumption did not arise, and by the bringing of an action as by law required, the parties were removed to a court of competent jurisdiction where their respective rights to the possession of the ground were to be determined with no conclusive presumption as to the validity of either title, and where was to be adjudicated upon the facts adduced and proved which of the claimants, if either, was entitled to the possession of the premises in dispute. Before the court, both claimants became contestants, and in a sense, plaintiffs, and each was required to show his title and to recover, if at all, on the strength of it. While in a contest between them the court may indulge the presumption that the location prior in time, prima facie at least, has the better right, yet it has but the effect of casting the onus on the other contestant to rebut such presumption, and the burden of showing the invalidity of such apparently prior location, or the showing of some competent facts which give him a better right to the ground in dispute. In other words, the parties are not concluded by the mere fact of priority of location. If such were the case there would be no necessity of the provision of law requiring an adjudication by the court. While as to the Divide the Cliff location was prior in time, nevertheless the owner of the Divide, having filed an adverse claim and having brought suit as by law he was required to do in order to have determined which of the two claimants had the better right to the ground in dispute, he was interested in showing that at the time of the location of the Cliff its discovery point was located within the boundaries of the South Mountain, a then valid and subsisting claim, and that the ground so attempted to be located was already covered by a senior claim, and,

therefore, was not at that time subject to location; that by reason thereof the location of the Cliff was not only void as against the owners of the South Mountain, but all the world; and, consequently, when the South Mountain became forfeited, the ground was then subject to location by the owner of the Divide, and, in locating it, he had the right to treat the pretended location of the Cliff as a mere nullity, and as not opposing any obstacle to a valid location of the ground by himself.

The case at bar, therefore, presents a different question from the one involved in the *Lavagnino Case* where the opinion of the court was based upon the hypothesis that the Uhlig claims were valid locations, and where only the question of overlapping claims was involved. This case is, therefore, not controlled by that decision, but is controlled by the more recent decision of the Supreme Court of the United States in the case of *Brown v. Gurney,* 201 U. S. 184, 26 Sup. Ct. 509, 50 L. Ed. —. In that case the Cripple Creek Mining Company owned a lode mining claim called the "Kohnyo." The claim conflicted with a patented placer which divided it into two parts. The discovery of mineral on the lode claim was made, and the workings and improvements were, on the north 500 feet of the claim. The south end, being 700 feet in length, was without development work. The local Land Office permitted the claimant of the Kohnyo to enter the two tracts, separated by the placer claim, as one claim, but the department ultimately refused to issue a patent for such tract, basing the refusal upon the ground that two portions of a mining claim separated by a patented placer could not be included within one patent. The applicant, however, was given the privilege to apply for patent upon either of the aggregated tracts, and directed that, in default of an election or appeal by the claimant, within sixty days from the date of the order, May 28, 1895, the entry of that portion of the claim (the 700 feet) lying south of the placer should be canceled. No appeal was taken, but the claimant of the Kohnyo instituted proceedings against the claimant of the placer to secure title to the vein of the Kohnyo, which, it was claimed, passed through the portion of the

placer claim which conflicted with the Kohnyo location. On May 7, 1898, a decision was rendered against the claimant of the Kohnyo. On June 14, 1898, the claimant of the Kohnyo filed in the Land Office a written instrument by which it elected to retain and patent the north end of the Kohnyo claim. On July 15, 1898, the Commissioner of the General Land Office canceled the entry of the Kohnyo claim south of the placer claim. On May 13, 1898, Brown located this 700 feet as the "Scorpion" lode claim. On June 23, 1898, Gurney located the same premises as the "Hobson's Choice" lode claim, and, on July 16, 1898, Small located the same ground as the P. G. claim. Brown applied for patent as the owner of the Scorpion. Gurney adversed this application as the owner of the Hobson's Choice as did Small also, as the owner of the P. G. claim. The trial court awarded the possession of the ground to Brown. On an appeal the Supreme Court of the state reversed that judgment, and awarded the possession to Gurney. On an appeal to the Supreme Court of the United States, in affirming the latter judgment the court said:

"In adverse proceedings each party is practically a plaintiff and must show his title. (citing case) . . . Of course, it is essential that at the date of a location the ground located on should be part of the public domain, and in the present case the specific question affirmatively raised was whether the ground in controversy was a part of the public domain at the time of the respective contested locations."

In determining the matter the court said that the important question was whether the ground in controversy reverted to and became a part of the public domain from the time of the

"Decision of the Secretary, May 7, 1898; or from the filing of the Kohnyo claimant of its election to retain the northerly tract and relinquish the other, June 14, 1898; or upon the formal cancellation of the entry July 15, 1898."

After a discussion of the question the conclusion was reached that such fact resulted from the election and abandonment filed by the Kohnyo claimant June 14, 1898. Thereupon it was further observed by the court:

"That by reason of that abandonment, the southerly tract, for the first time, reverted to and became a part of the public domain. And as the Hobson's Choice was at first location of the ground made after such abandonment, it follows that it was valid and that its owner was entitled to a decision in its favor. We again state the dates of the respective locations. The Scorpion was located May 13, 1898. The Hobson's Choice was located June 23, 1898. The location of the P. G. was July 16th. Thus it is seen that the Scorpion was attempted to be located at a time when the premises were not subject to location; that the Hobson's Choice was located when the premises had reverted to the public domain; and that the location of the P. G. was after that date."

In that case the doctrine that it is essential that at the date of the location the ground located on should be part of the public domain and that ground covered by an existing location is not subject to relocation until forfeiture or abandonment of the prior location, is again emphasized. This doctrine is not disputed but is fully recognized in the *Lavagnino Case* where in the opinion it is said that the ground in dispute when located by Smith, the Yes You Do location, "was not unoccupied mineral lands of the United States and consequently not subject to be relocated by Smith," because embraced within the then locations of the prior valid and subsisting Uhlig claims. Giving the *Lavagnino Case* the construction contended for by the respondent, is, in effect, to make it overrule *Belk v. Meagher,* and *Gwillim. v. Donnellan,* and to render it in conflict with the decisions of both federal and state courts on the question. We do not believe any such result was intended by that decision. Likewise, to give it the meaning contended for renders it in conflict with the more recent decision of *Brown v. Gurney.* Whatever room there may be for the contentions (*Ambergris Min. Co. v. Day* [Idaho], 85 Pac. 109, and *Wilson v. Freeman,* 68 L. R. A. 842, note 5) that the *Lavagnino Case* is in conflict with or distinguishable from prior decisions, it is sufficient for us that we follow *Brown v. Gurney* more recently decided, and which more nearly applies to the facts of the case at bar.

It necessarily follows, from what we have said, that we have reached a conclusion different from that of the trial court, and hence the order of this court is that the judgment of the court below be reversed and a judgment entered in

favor of the appellant decreeing to him the possession of the ground. Costs to be taxed against respondent.

BARTCH, C. J., concurs in the judgment. McCARTY, J., concurs.