GEORGE W. CAREY *et al.* v. R. D. REEVES *et al.*

1. PIKE'S PEAK, *When Within Kansas.* On the 17th day of January, 1861, the region of country known as "Pike's Peak" was within the territory of Kansas.

2. SERVICE BY PUBLICATION — *Insufficient Affidavit — Mortgage — Foreclosure — No Jurisdiction.* Where an affidavit for constructive service by publication, filed on January 17, 1861, showed upon its face that the defendant resided within the region of country known as "Pike's Peak" at the time that the action was commenced and the affidavit filed, it was not sufficient to give the district court jurisdiction, constructive or otherwise, over the defendant, upon the ground that he was a non-resident of the territory of Kansas. Under the provisions of the code of civil procedure of 1859, a plaintiff could not upon such an affidavit proceed to make service by publication, and the district court had no jurisdiction to foreclose a mortgage in such a case where the only service of summons was by publication upon such an insufficient affidavit, and no personal or other appearance

was made by the defendant. (Comp. Laws of 1862, ch. 26, tits. 4 and 5, and especially §§ 52, 78, 79. See also tit. 11, § 385, of the same chapter.)

*Error from Shawnee District Court.*

CAREY AND BRAY commenced, on October 26, 1883, this action to quiet title to a quarter-section of land in Shawnee county. They alleged ownership and actual possession. The claim of title of each side is set out in the special findings, as follows:

"CONCLUSIONS OF FACT.

"1. April 26, 1859, one James McCamman duly entered and paid for, at the United States land office, according to law, the southeast quarter of section 15, township 13 south, of range 15 east, in Shawnee county, Kansas, and the proper officer executed and delivered to said McCamman a duplicate receipt for said land, in the manner provided by law, at the time and place aforesaid.

"2. Afterward, on April 26, 1859, the said James McCamman executed and delivered to one Reuben H. Farnham his certain mortgage, in writing, for the purpose of securing the payment of $223.20 when the same should become due and payable, according to the terms of a certain promissory note in writing executed by McCamman to said Farnham, which mortgage described the following land, to wit, the southeast quarter of section 15, township 15, range 15 east.

"3. Afterward, on January 17, 1861, the said Reuben H. Farnham filed his petition as plaintiff in the clerk's office of the district court of Shawnee county, against the said James McCamman as defendant, for the purpose of reforming said mortgage according to the facts, and to foreclose said mortgage upon the land now in controversy in this action, and prayed that said premises might be sold for the payment of the principal and interest of said note.

"4. Afterward, on 17th day of January, 1861, the said Reuben H. Farnham, by Wilson Shannon, his attorney, for the purpose of securing service of summons by publication in said action to foreclose said mortgage, filed in the office of the clerk of the district court the following affidavit, and none other:

" 'REUBEN H. FARNHAM v. JAMES McCAMMAN.

" 'Territory of Kansas, Shawnee county. District court sitting in said county, second judicial district.

" 'Wilson Shannon, being duly sworn, deposeth and saith that he is the attorney of record for the above-named plaintiff in the above-enti-

tled cause; that the said plaintiff is a resident of the state of New York, and is now absent from his territory. That the said plaintiff, on the —— day of January, 1861, filed in said court a petition against the said James McCamman, defendant, praying that certain lands situate in said county may be decreed to be sold to satisfy a mortgage, given by the said defendant to the said plaintiff to secure the payment of a certain sum of money therein named, and that the said defendant has removed from the said county of Shawnee, and now resides in that region of country known as 'Pike's Peak,' and that service of a summons cannot be made on the said defendant within this territory; and that the plaintiff wishes to obtain a service on said defendant by publication; and further this affiant saith not.

(Signed) WILSON SHANNON.

"'Sworn to and subscribed before me, this 14th day of January, 1861.

M. G. FARNHAM, *Notary Public.*

"'Filed January 17, 1861. L. McARTHUR, *Clerk.*

[SEAL.] By H. McARTHUR, *Deputy Clerk.*'

"5. Afterward, to wit, October 9, 1861, the said Reuben H. Farnham, plaintiff in said action, filed the following notice of publication and proof of publication in said action in the clerk's office of said court, which notice of publication is in words and figures following:

### "'NOTICE.

"'James McCamman, late of the county of Shawnee and territory of Kansas, will take notice that Reuben H. Farnham did, on the 17th day of January, 1861, file his petition in the district court sitting in and for the county of Shawnee, in the second judicial district and territory of Kansas, against the said James McCamman, defendant, setting forth that the said James McCamman gave a mortgage to said plaintiff on the southeast quarter of section No. 15, of township No. 13, of range No. 15, of the lands subject to entry in the Pawnee land district, Kansas territory; that by the mutual mistake of the parties said land was described in said mortgage as being in township No. 15, instead of township No. 13; that the object of said mortgage was to secure the payment of $180, according to a certain note referred to in said mortgage; that said petition prays that said mortgage may be reformed and said mistake corrected, and that said defendant may pay said sum of money with the accruing interest which is now claimed to be due, or that said premises may be sold to pay the same. And the said James McCamman is notified that he is required to appear and answer said petition on or before the 4th day of March, 1861, or the same will be taken as confessed. REUBEN H. FARNHAM,

By WILSON SHANNON, *His Attorney.*

"'Attest: L. McARTHUR, *Clerk,*

By H. McARTHUR, *Deputy Clerk.*'

"And which proof of publication of the foregoing notice is in words and figures following:

"'STATE OF KANSAS, COUNTY OF SHAWNEE:

"'J. F. Cummings, being duly sworn, upon oath says that the notice hereto annexed was published for seven weeks in the Topeka *Tribune,* a newspaper published and printed in the city of Topeka, county of Shawnee, the first publication being made on the 19th of January, 1861; the second, January 26, 1861; the third, February 2, 1861; the fourth,

February 9, 1861; the fifth, February 16, 1861; the sixth, February 23, 1861; the seventh, April 2, 1861; and further saith not.

(Signed)          J. F. CUMMINGS.

"'Subscribed in my presence and sworn to before me, this 9th day of October, 1861.          JAMES FLETCHER, *Clerk.*

By H. McARTHUR, *Deputy Clerk.*

"'Printer's fees, $10.    Filed, October 9, 1861.

JAMES FLETCHER, *Clerk.*

By H. McARTHUR, *Deputy Clerk.*'

"6. January 17, 1861, and for some time previous thereto, the said James McCamman, defendant in the action commenced by said Reuben H. Farnham for the purpose of foreclosing said mortgage, resided in the town of Denver, then situated in Arapahoe county, in the territory of Kansas, and there continued to reside until after the 29th day of January, 1861, when Kansas became a state, and said town of Denver was by law excluded from said boundaries.

"7. Afterward, on October 9, 1861, at the regular term of said district court begun and held in said Shawnee county, the said action of said Reuben H. Farnham against James McCamman, for the foreclosure of said mortgage, came regularly on for trial, and on the consideration of said court there was found to be due to said plaintiff, Reuben H. Farnham, from said defendant, James McCamman, the sum of $390.20, and that all the allegations in said plaintiff's petition were true as therein stated, and a decree was entered reforming said mortgage, and for the sale of the southeast quarter of section 15, township 13, range 15, in Shawnee county, as will more fully appear by a copy of said judgment and decree attached to and made a part of plaintiff's petition in this action.

"8. Afterward an order of sale in pursuance to said decree was issued by the clerk of said court to the sheriff of said county, and the said sheriff of Shawnee county returned said order of sale, showing by his said return indorsed thereon, that said sheriff sold said real estate according to law, August 5, 1863, to said Reuben H. Farnham, and said return indorsed on said order of sale having been afterward examined by said court, and the court being satisfied on examination of said proceedings that said sheriff had made said sale in all things in conformity to law, the court confirmed said sale, and ordered said sheriff to make and deliver a sheriff's deed for said premises to the said purchaser, as will more fully appear by examination of the order of the court confirming said sheriff's sale attached to and made a part of plaintiff's petition in this action.

"9. Afterward, to wit, ——— the said sheriff executed and delivered to said Reuben H. Farnham a sheriff's deed for said premises, which deed is in form and substance in due form of law, and said sheriff's deed was recorded in the office of the register of deeds of Shawnee county, on ———, 186-.

"10. Afterward, to wit, ——— the said Reuben H. Farnham conveyed said premises to ——— by a deed of conveyance, and the defendants hold title to said premises through a regular claim of title from Reuben H. Farnham, who held the same by virtue of said sheriff's deed, unless the plaintiffs' title is superior to defendants' title.

"11. No summons was served on said James McCamman, in said action, by the sheriff or other officer or person, except the service of summons by publication referred to in conclusion of fact No. 5; and no other affidavit was made by the plaintiff, Reuben H. Farnham, or any one in his behalf, or for him, for the purpose of procuring service of summons by publication, except the affidavit of Wilson Shannon, copied in conclusion of fact No. 4.

"12. No other affidavit or proof of publication of said service of summons by publication was filed in said action except the affidavit of J. F. Cummings, copied in conclusion of fact No. 5.

"13. The said James McCamman, defendant in said action, did not appear to said action in person, nor by attorney; nor did the said James McCamman know that said action had been commenced in the Shawnee district court by Reuben H. Farnham, for the purpose of foreclosing said mortgage, for more than 10 or 15 years after said property had been sold by the sheriff, under said decree, to Reuben H. Farnham; and during all said time, from January 17, 1861, until after the conveyance to Cornelius Bray, as stated in the next finding, 10 or 15 years thereafter, said McCamman had no knowledge of the pendency of said action in said court, or that said premises had been sold by the sheriff and purchased by Farnham.

"14. August 16, 1881, the said James McCamman sold and conveyed said premises, by a deed of conveyance, to the plaintiff, C. Bray.

"15. Said C. Bray sold and conveyed the undivided one-half of said premises, by a deed of conveyance, to the plaintiff Geo. W. Carey, and the said Geo. W. Carey and C. Bray are the owners in fee of the title from said James McCamman, the grantee of the government of the United States for said

premises, unless the sheriff's sale, made in pursuance of the judgment made by the consideration of the court in the action of the said Reuben H. Farnham against James McCamman, divested the said James McCamman of the title to said premises heretofore described.

"16. At the date of the commencement of this action the plaintiffs were in the actual possession of said premises as alleged in their petition.

"17. Prior to the time the plaintiffs went into the possession of the premises described in plaintiffs' petition, the said premises were vacant and unoccupied land.

"18. The defendants have paid all the taxes on said premises for the last twelve years.

"19. The patent issued by the government of the United States to James McCamman for the southeast quarter of section 15, township 13 south, of range 15 east, was dated June 1, 1860.

"20. Neither the said James McCamman, nor the said Reuben H. Farnham, nor any subsequent grantee taking under said sheriff's deed, nor either of the defendants, has at any time been a resident of the state of Kansas since the date of its admission as a state."

The following are the legal conclusions:

"The questions of law in this action are:

"1. Was the affidavit of Wilson Shannon, filed in the clerk's office of the district court, January 17, 1861, described in conclusion of fact No. 4, in the action commenced by Reuben H. Farnham against said James McCamman, for the purpose of reforming and foreclosing the mortgage hereinbefore described, sufficient in law to authorize service by publication in said action against the defendant, James McCamman, under § 79, code of procedure, 1859, Compiled Laws of 1862, chapter 26?

"2. Was the affidavit of J. F. Cummings, publisher of the newspaper, sufficient in law to show that the publication notice was made 'six consecutive weeks,' as required by law in such actions?

"3. If both these propositions are found in the affirmative, then the plaintiffs must fail in this action. If either of these propositions is solved in the negative, then the court did not have jurisdiction to decree a sale of the land in controversy described in plaintiffs' petition, and the plaintiffs are entitled to recover in this action.

"4. The issue of law is against the plaintiffs, and in favor of the defendants."

To the conclusions of law in favor of the defendants and against the plaintiffs, the plaintiffs excepted, and bring the case here.

*G. C. Clemens,* for plaintiffs in error.

*H. H. Harris,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The United States issued a patent to the land in controversy to James McCamman on the 1st day of June, 1860, and the findings are to the effect that the plaintiffs are the owners by conveyances from McCamman, unless the judgment of October 9, 1861, of Reuben H. Farnham against James McCamman and the sale of the land thereunder divested McCamman of his title. When this case was here before, (*Carey v. Reeves,* 32 Kas. 718,) Mr. Justice VALENTINE, speaking for the court, said:

"When this affidavit [for publication service] was filed, is not shown. It is alleged that the action was commenced on January 17, 1861, and the affidavit shows that the petition was filed 'on the — day of January, 1861;' but there is nothing to show when the affidavit was in fact filed. If it was filed prior to January 29, 1861, the region of country known as 'Pike's Peak,' or a portion thereof, was in Kansas; but if the affidavit was filed after January 29, 1861, then such region was not in Kansas, and no part thereof was in Kansas. We suppose that when the plaintiffs in this action say that the foreclosure action was commenced on January 17, 1861, they mean that the petition was filed on that day. But when the service was made is not shown; nor is it shown when the judgment was rendered. It may have been in 1861, or in 1862, or in some subsequent year. We cannot say that the court below erred in deciding against the plaintiffs in this particular."

At the last trial it was shown, and the court expressly found, that the affidavit for publication was filed on the 17th

37 — 46 KAS.

day of January, 1861. This was while Kansas existed as a territory and before its admission as a state into the union. It was also shown, and expressly found at the last trial, that on January 17, 1861, and for some time previous thereto, James McCamman resided in Denver, and within the territory of Kansas, and continued to reside there after the 29th of January, 1861, when Kansas was admitted as a state.

The former decision of this court in this case, at its July term, 1884, (32 Kas. 718,) is not decisive nor controlling, because the facts now presented in the record are materially different from those which we considered at the time the former opinion was handed down. The affidavit for publication stated that the defendant, James McCamman, "has removed from the said county of Shawnee, and now resides in that region of country known as 'Pike's Peak,' and that service of summons cannot be made on him within this territory." At the time that Kansas was organized as a territory, its western boundary extended "to the eastern boundary of the territory of Utah, on the summit of the Rocky Mountains." We must take judicial notice of where "the region of country known as 'Pike's Peak'" existed on the 17th of January, 1861. (*The State v. Teissedre*, 30 Kas. 476; *The State v. Baldwin*, 36 id. 1; *Railroad Company v. Burge*, 40 id. 736.)

Lippincott's Pronouncing Gazetteer of the World, (published in 1856,) referring to Kansas, said:

"It is a territory of the United States of America, formed by an act of congress passed May, 1854, lying between 37° and 40° north latitude, and between about 94° 30' and 107° west longitude. About 100 miles of the west portion lies between 38° and 40° north latitude. It is bounded on the north by Nebraska territory; east, by the states of Missouri and Arkansas; south, by Indian Territory and New Mexico; and west, by New Mexico and Utah. This territory is about 630 miles in length, from east to west, and 208 in its widest, and 139 in its west part, including an area of nearly 114,798 square miles. The Rocky Mountains separate it from Utah, and the Missouri river forms a small part of the northeast boundary."

The New American Cyclopædia, Vol. 10, p. 103, (published in 1860,) described Kansas as follows:

"It is a territory of the United States, lying between latitude 37° and 40° north, and longitude 94° 40′ and 106° 50′ west, bounded north by the territory of Nebraska, east by the state of Missouri, south by the Indian Territory and New Mexico, and west by New Mexico and Utah. With the exception of the northeast corner of the territory, where the boundary line follows the irregular course of the Missouri river, its shape is that of a parallelogram as far west as longitude 103°. The boundary then follows this meridian north to latitude 38°, and runs west along that parallel to longitude 106° 50′; thence north to about latitude 39° 20′, east to longitude 105° 40′, and finally north again until it meets the Nebraska frontier. Length east and west, 550 miles; breadth, east of longitude 103°, 208 miles; west of that line, 139 miles; area, 114,798 square miles."

The Encyclopædia Britannica, (Vol. 23, p. 796,) in describing the Rocky Mountains, says:

"Gray's Peak (14,341 feet) is the highest point in this range, (the front, or Colorado range,) but, although on the continental divide, it is too far west to be visible from the plains. This divide, which separates the Atlantic waters from those of the Pacific, follows the front range as far as Gray's Peak, where it is deflected westward for 20 miles to the Sawatch range, which it follows for about 75 miles. In this deflection the divide passes between the Middle and South parks, the lowest pass in this part being that called the 'Tennessee,' (10,418 feet,) which leads from the head of the Arkansas to the Grand river branch of the Colorado.

"The Sawatch range is one of the highest and best-marked chains in the Rocky Mountains. It lies west of the head of the Arkansas; and its dominating peaks, along the whole range, exceed 14,000 feet. The most northerly of these, the Mountain of the Holy Cross, (14,176 feet,) was so named on account of the existence on its eastern flank of a large snow-field, lying in two ravines which intersect each other at right angles, in the form of a cross, and which in summer is conspicuously visible from a great distance. The highest point is Mount Harvard, (14,375 feet,) and the passes range from 12,000 to 13,000 feet. The continental divide follows the

Sawatch range to its southern end, in latitude 38° 20′, and then runs in a southwesternly direction for about 75 miles, over a high region without any distinctly-marked range. Here it turns, and, running southeasterly, follows the crest of the San Juan range, which at many points rises above 13,000 feet."

Not only as a matter of fact is the summit of the Rocky Mountains (the western boundary of the territory of Kansas) a long distance west of Pike's Peak, but it was so generally mentioned in the gazetteers, geographies and encyclopædias in general use in 1861. Therefore, "the region of country known as 'Pike's Peak,'" on the 17th of January, 1861, and until Kansas was admitted into the union, on January 29, 1861, was within the territory of Kansas, and generally known to be within the territory of Kansas. The affidavit for service by publication showed upon its face that James McCamman had removed from the county of Shawnee, and resided "in the region of country known as 'Pike's Peak.'" That region was within, not without, the territory of Kansas at the date of the filing of this affidavit; therefore McCamman was not a non-resident of the territory of Kansas at the time the service by publication was made; therefore such publication was void — that is, it was invalid as a constructive service, because the affidavit for publication affirmatively showed that the defendant resided within the territory of Kansas, and it was not stated that he had departed from the territory or the county of his residence with the intent to delay or defraud his creditors, or to avoid the service of a summons, or to keep himself concealed.

It has already been decided by this court that it cannot be shown in a collateral attack that the affidavit for publication is untrue. (*Ogden v. Walters*, 12 Kas. 282; *Rowe v. Palmer*, 29 id. 337; *Carey v. Reeves*, 32 id. 718.) But that is not this case. In this case, the affidavit is insufficient upon its face. It does not state facts to authorize any publication service; therefore no personal or constructive service was ever had upon McCamman prior to the rendition of the

judgment against him on the 9th day of October, 1861. (Comp. Laws of 1862, ch. 26, tit. 4, 5, and §§ 52, 78, 79. See, also, title 11, § 385, same chapter.)

Upon the findings of fact the judgment must be reversed, and the cause remanded with direction to the district court to render judgment for the plaintiffs and against the defendants. This direction will not prevent the defendants from recovering any taxes paid by them, if any have been paid, while the land has been in controversy in any of the courts of this state. (Laws of 1876, ch. 34, § 149; Gen. Stat. of 1889, ¶ 7004; *Wood v. Gruble*, 31 Kas. 69.)

All the Justices concurring.