State v. Bell.

No. 27,068.

THE STATE OF KANSAS, *Appellee,* v. DALE BELL, *Appellant.*

SYLLABUS BY THE COURT.

1. RAPE—*Evidence—Sufficiency.* In a prosecution for statutory rape, the record examined and the evidence held sufficient to prove the *corpus delicti* and the guilt of the defendant.

2. SAME—*Venue—Sufficiency of Proof—Necessity of Objection.* Error assigned on the state's failure to prove the venue considered, and held that the *locus* of the offense was never a serious question in the trial and was sufficiently proved to have been in the vicinity of the county seat where defendant was tried, and that the venue was properly laid in that county; and held also, that any want of formality in the matter of establishing the venue was not fairly and explicitly called to the attention of the trial court, and consequently is unavailing on appeal.

Appeal from Lyon district court; ISAAC T. RICHARDSON, judge. Opinion filed November 6, 1926. Affirmed.

*Bennett R. Wheeler, S. M. Brewster* and *John L. Hunt,* all of Topeka, for the appellant.

*Charles B. Griffith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *S. S. Spencer,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Defendant was convicted in the district court of Lyon county of the crime of statutory rape. The state's evidence tended to show that the offense was committed by defendant upon the person of a female child of fifteen years, on the evening of June 11, 1925, at some distance into the country, near Emporia, the home of the girl's parents. On their return to the girl's home her mother heard a conversation between them in which defendant said, "Irene, don't cry; you haven't done anything so bad; I have been a brute to you." Next morning the mother found the girl's bloomers, which were tattered and stained. Two days later the mother accused defendant of seducing the girl. He said, "I know I have," and stated his willingness to marry the girl. The girl's father also took defendant to task for the alleged misdeed. The father's testimony reads:

"Q. Well, what did you tell this man? A. I asked him what he meant by taking this girl out and doing like he did.

Criminal Law, 16 C. J. pp. 767 n. 87, 772 n. 28; 17 C. J. pp. 59 n. 46, 68 n. 34. Rape, 33 Cyc. pp. 1458 n. 39, 1486 n. 12; 68 L. R. A. 70; L. R. A. 1916B, 747; 22 R. C. L. 1220.

State v. Bell.

"Q. What did he say in reply to that? A. He didn't have much of any-thing to say. . . .

"Q. What had you accused him of, if anything? A. I accused him of tak-ing this girl out and tearing her clothes off and having sexual intercourse.

"Q. Did he admit or deny that, and if so, what did he say? A. He ad-mitted it, and said he would do anything right."

In defendant's own testimony, he virtually admitted that the girl's mother had accused him of the crime.

"Q. Didn't she ask you what you meant by taking her out and tearing her clothes? A. I told her I didn't do that."

Three days after the offense was committed, on the evening of the day the mother accused defendant, and in apparent accord with his alleged promise to the injured parents to right the wrong he had done the girl, he married her. Some time later, date not shown, the girl left defendant. She testified:

"Q. Didn't you leave him the first time and go home to your mother? A. I never left him but once."

On July 20, 1925, about six weeks after the marriage, the girl made the following affidavit:

"I am now of the age of fifteen years. My name was formerly Irene Holzap-fel. On the evening of June 11, 1925, Dale Bell took me to the swimming pool. After we got through swimming he took me in his car and started home, but said that his car was only hitting on three cylinders and proposed that we go out on the pavement and see if we could not get it to work properly. We went south across the bridge at Soden's until he came to a crossroad about a mile or a mile and a half south, where he turned to the west until he came to a hedge or bushes, where he stopped. He then asked me to submit to him, but when I refused he accomplished his act by force; that is, he had sexual intercourse with me against my will. ·

"On the following Sunday, June 14, 1925, he married me. He claimed that he loved me and would treat me well, and that he was very sorry for what he had done, and, believing him, I married him. In about a week after mar-riage he began to abuse me. He told me that, 'Now, that I have married you, the state cannot do anything with me.' The third night after we were married he went by the house three times with another girl, and when I complained about it he said that I had no complaint coming."

                                        "(Signed)      .IRENE BELL."

Defendant was arrested and at the preliminary the girl gave testi-mony in harmony with her affidavit; but at the trial she repudiated her earlier testimony and affidavit, and declared that she had been coerced by her mother into testifying as she did, and that her earlier testimony and affidavit were untrue; that she had never had sexual intercourse with defendant prior to her marriage with him, and that

her mother had threatened to have her incarcerated in a reform school or lunatic asylum unless she gave evidence to support the prosecution:

"A. She told me last week—Friday—when I drank the iodine, was it because I had been living with Dale and crying, too. I had been up to Mr. Spencer's office trying to get him to dismiss it, and she knew as well as any of us I intended to stick with Dale, and she told me if I did, she was going to go ahead with this trial and send me to the [Beloit] reform school. . . . If I went for him I was to be sent to the insane asylum, and if I went against him and did like she told me to she would get me out of it and bring me home."

In rebuttal the girl's mother denied that she ever suggested to her daughter that she should tell a falsehood, and swore she never threatened to send the girl "to an insane asylum or to Beloit."

Jury trial, verdict of guilty, and sentence of defendant to the state reformatory.

Defendant appeals, contending that neither the *corpus delicti* nor the venue was proved, nor did the evidence establish the guilt of the defendant.

Touching briefly on these points, it is settled law that the fact that the victim of an offense of statutory rape takes the witness stand in behalf of the accused and denies that he had taken any unlawful liberties with her person is not necessarily of controlling significance. The fact of the crime may otherwise be conclusively established. (*State v. Taylor*, 119 Kan. 260, 237 Pac. 1053.)

It is argued that there was no proof of carnal penetration. There was evidence that the mother said to the defendant, "I know what you have done to my little girl. You have conceived her." And there was evidence that in response to that accusation defendant said, "I know I have." (*State v. Cruse*, 112 Kan. 486, 212 Pac. 486, syl. ¶ 6.) There was also the evidence of the conversation between the girl's father and defendant; there was the incident of her crying on her return to her home after going swimming and auto riding with defendant, and his words to her at that time, "Irene, don't cry; you haven't done anything so bad; I have been a brute to you." There was also the evidence of the tattered and stained bloomers, and there was the evidence inherent in the fact that the girl had made an affidavit and had testified at the preliminary to the fact of the crime. And the fact that he married the fifteen-year-old child on the very day the mother accused him of ravishing or seducing her is not without evidential significance under all the circumstances. Cer-

State v. Bell.

tainly all this array of evidence was quite sufficient to prove carnal penetration, and likewise to establish the defendant's guilt, since the jury gave it credence. (*State v. Taylor*, supra.)

The well-worn point is also raised that the prosecution failed to prove the venue—that the offense was committed in Lyon county. It is doubtful if that point was sufficiently raised or intended to be raised in the trial court. If so, it was enshrouded in this cloud of words:

"The defendant now enters a demurrer to the evidence offered by the state for the reason and on the grounds that same does not show a form of action or that a crime has been committed as alleged in the information in the case, there being no evidence here that an actual penetration was had or that the act of rape was fully consummated as alleged."

If this pleading was designed to present the proposition that venue had not been proved, it was so obscurely hinted at that apparently neither the prosecuting attorney nor the trial court caught the point. All the evidence in this case tended to show that the girl's home was in Emporia, that defendant took her to a swimming pool and then drove to the end of the paving and across the bridge at Soden's, and a mile or so beyond, and there turned west towards a hedge or some bushes and committed the crime. There is not the slightest reason to doubt that these places were well known to all concerned in the trial, and that court and jury knew without formal testimony that "the end of the pavement," "Soden's," "the bridge," and "a mile and a half south," and "west to a hedge or bushes," were all familiar places in the vicinity of Emporia and all well within the confines of Lyon county. In this appeal defendant makes no pretense that the *locus* of the alleged offense was or might have been outside the borders of Lyon county. (*State v. Dollar*, 88 Kan. 346, 128 Pac. 365; *State v. Pack*, 106 Kan. 188, 186 Pac. 742. And see, also, *K. C. Ft. S. & G. Rld. Co. v. Burge*, 40 Kan. 736, 21 Pac. 589; *Carey v. Reeves*, 46 Kan. 571, 26 Pac. 951; *Railway Co. v. Paxton*, 75 Kan. 197, 88 Pac. 1082.) To reverse this case because this matter of venue was not formally proven, when it was never an issue in serious dispute, would scandalize the administration of justice. (*State v. Fleeman*, 102 Kan. 670, 677, 171 Pac. 618; *State v. Farrar*, 103 Kan. 774, 176 Pac. 987; *State v. Seidel*, 113 Kan. 390, 392, 214 Pac. 565.)

But apart from that, the rule has frequently been announced by this court and should be applied here, that whenever a litigant has a meritorious proposition of law which he is seriously pressing upon

the attention of the trial court, he must raise that point in such clear and simple language that the trial court can understand it, and if his point is so obscurely hinted at that the trial court quite excusably may fail to grasp it, it will avail naught to disturb the judgment on appeal. (*State v. Everett,* 62 Kan. 275, 62 Pac. 757; *State v. Balliet,* 63 Kan. 707, 66 Pac. 989; *Riverside v. Bailey,* 82 Kan. 429, 108 Pac. 796; *Emery v. Bennett,* 97 Kan. 490, 155 Pac. 1075; *Livingston v. Lewis,* 109 Kan. 298, 301, 198 Pac. 952; *Brick v. Fire Insurance Co.,* 117 Kan. 44, 230 Pac. 309; *Collis v. Kraft,* 118 Kan. 531, 532, 235 Pac. 862.)

In *Brown v. Oil Co.,* 114 Kan. 482, 483, 218 Pac. 998, it was said:

"A litigant will not be heard on appeal to complain of any order, ruling or judgment of a trial court which he suffered the trial court to make without objection . . . and mere general objections which do not plainly indicate the error a trial court is about to commit, are unavailing on appeal."

The judgment is affirmed.