No. 33,752

THE STATE OF KANSAS, *Appellee*, v. ROY LONG, *Appellant*.

(79 P. 2d 837)

Opinion filed June 11, 1938.

*Clarence R. Sowers, Claude E. Sowers* and *William Ward,* all of Wichita, for the appellant.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Edward Wahl,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: Defendant was convicted of two felonies charged in separate counts in the same information. The first count was a charge of burglary in the first degree. The second count was a charge of larceny of a Hamilton watch committed in the course of the burglary alleged in count one.

Upon conviction defendant was sentenced on count one to penal servitude for a term of ten to twenty-one years, and upon count two to penal servitude for a term of one to five years "in addition to the punishment prescribed for burglary in the first degree."

Defendant appeals, urging three points on our attention—venue not proved; burglary not proved; and no evidence of the value of the Hamilton watch.

Touching these points in order, the house where the incidents occurred which were relied on for conviction was occupied by the witness Thompson. The record reads:

"Q. And where do you live, Mr. Thompson? A. Approximately two and three quarters miles south of the Silica.

"Q. Is that particular place in what county? A. Rice county.

"Q. And how close do you live to the road? A. Well, around 100 yards, something like that—three or four hundred yards.

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"Q. Now, on the 26th day of August (date of alleged offenses), were you at your home? A. Yes, sir."

The court holds that this evidence was quite sufficient to lay the venue in Rice county. (*State v. Bell*, 121 Kan. 866, 869, 250 Pac. 281.) Moreover, it does not appear that this question of venue was raised in the trial court. If not, it is not entitled to consideration here. (*State v. Shehi*, 125 Kan. 110, 263 Pac. 787; *State v. Toelkes*, 128 Kan. 293, 278 Pac. 20.)

Touching the evidence to prove the crime charged, the significant facts were briefly these: Thompson and wife, who were the prosecuting witnesses, lived, with their baby, in a farmhouse. On the night of August 25, 1937, they retired late. The husband and wife slept together. Their baby's crib was in the same room, so placed as to catch the breeze. The bedroom led into a front room which had a door leading to the outside. That front door was locked when the Thompsons went to bed.

About 3 o'clock a. m. Mrs. Thompson was awakened by being touched by some person whom she dimly saw in the moonlit bedroom. She awoke her husband. The intruder, who was later identified as defendant, rushed from the bedroom into and through the front room and out through the front door, which he had already opened before the family was aroused. In his flight from the bedroom he ran against the baby's crib, knocking it to one side, so that it impeded Thompson's pursuit by the same exit. To save time, Thompson climbed out of the bedroom window, and the chase was on.

Defendant contends that this evidence did not show a breaking and entering so as to bring his offense within the definition of first-degree burglary according to the statute. How came he to be inside that dwelling house at that unseasonable hour of the night, while its master and his family were asleep within it? The outside door—and the only outside door, so far as shown by the record—was locked when the family went to bed at a late hour that night. It was a fair inference for the jury that he effected an entrance in the only apparently feasible way, by forcing or picking the door lock (G. S. 1935, 21-513).

It has always been the rule of appellate review that it is the jury, not the supreme court, which has to draw the inference of guilt from the circumstances. It is the jury which has to be convinced

beyond a reasonable doubt. The industrious student of our reports will find scores of cases, ranging from murder and burglary down to bootlegging, where the evidence to support the verdict of conviction seemed very slim when set down in cold type for this court to read, but in every such instance the jury's verdict was respected. Typical of these cases were *State v. Dull,* 67 Kan. 793, 74 Pac. 235; *State v. Lister,* 121 Kan. 524, 247 Pac. 846; *State v. Lawellin,* 125 Kan. 599, 264 Pac. 1035; *State v. McKee,* 131 Kan. 263, 291 Pac. 950; and *State v. Williams,* 134 Kan. 125, 4 P. 2d 453. In the Dull case the jury returned a verdict of guilty because they concluded that no one else could have murdered Doctor Roland. In the Lister case defendant was convicted on a liquor charge because on his farm there was a hole in the hedge fence through which people could enter his field and help themselves to his supply of liquors, leave the price, and go on their way. In the Lawellin case defendant was convicted of chicken stealing. He had been seen on the premises of a farmer while the owner and his family were absent. On their return the farmer discovered that a number of his chickens had been stolen. A little girl testified that she heard chickens flopping around in the "turtle-deck" of defendant's coupé as he passed her on the highway. In the McKee case the defendant was convicted of stealing a red hog, where the evidence chiefly consisted of the discovery of red hog bristles in his Ford coupé some two months after the larceny. In the Williams case the evidence showed that the sheriff caught the defendant in a field of kafir corn about 40 feet distant from a sack containing intoxicating liquors.

The suggestion is now made that defendant might have entered the house through an open bedroom window. The *locus in quo* was very hazily revealed by the witnesses, but there is not a hint that the distance from the ground to the open window through which Thompson leaped to pursue the intruder was such that the latter could have made an entrance in that fashion. A majority of the court holds that the circumstances were sufficient to take the question to the jury on the manner of defendant's entrance to that occupied dwelling house.

The next error urged pertains to the state's failure to prove the value of the stolen Hamilton watch. However, where "any larceny" of property is committed in a dwelling house in the nighttime, the offense is a felony, irrespective of value (G. S. 1935, 21-537). So, too, where the larceny is committed in connection with a related

crime of burglary, evidence of value of the property larcenously taken is not required by the statute. (G. S. 1935, 21-524.)

There is no error in the record, and the judgment is affirmed.

HUTCHISON and WEDELL, JJ., dissenting.