THE STATE OF KANSAS v. ROBERT HAWTHORN BURTON.

No. 12,685.  (66 Pac. 633.)

SYLLABUS BY THE COURT.

1. MURDER—*Competent Testimony.*  It is competent, in a trial for murder, for the state to show that the accused, who was a single man, endeavored to induce a woman, to whom the deceased was engaged to be married, to break the engagement. Such conduct is some evidence that the deceased was an obstacle in the way of the desire of the accused to marry the woman, and goes to the question of motive.

2. ——— *Instruction Construed.*  In a criminal case, an objection was sustained to a question after it had been answered by the witness. The court instructed the jury that only such evidence as had been admitted and permitted to stand should be considered. *Held,* that the answer will be treated as having been stricken out.

3. ——— *Character and Reputation—Exception to Rule.*  Information conveyed before the killing to a party on trial for murder, who justifies on the ground of self-defense, that the deceased was a violent and turbulent man and accustomed to go about armed, is admissible, whether the informant gained his knowledge from general reputation of the deceased or from personal observation of his specific acts. The rule that bad character in the respect mentioned can be established only by general reputation of the deceased in the community has no application to the admission of such testimony. It is competent for the purpose of determining the state of mind of the accused at the time of the homicide, and whether he was induced to believe, in good faith, that he was in imminent danger of death or great bodily harm at the hands of the person killed.

4. ——— *Threats by Deceased.* It is competent for a defendant on trial for murder to prove threats by the deceased against him, when the former justifies the homicide on the ground of self-defense.

Appeal from Marion district court; O. L. MOORE, judge. Opinion filed November 9, 1901. Division one. Reversed.

### STATEMENT.

APPELLANT was convicted of murder in the first degree. At the trial he justified on the ground of self-defense.

The appellant, Burton, went to Marion county in the spring of 1900, to work at his trade as a painter. He was an unmarried man, and boarded at Drake's restaurant, in the city of Marion. He secured work in the country, about ten miles east of that town, at house-painting for farmers in the vicinity. He painted the dwelling-house of Charles Doty, and while doing this work he boarded and lodged at the Doty house. The family consisted of Charles Doty and wife and their daughter Jessie, aged about thirty years. The daughter was engaged to marry the deceased, Fred. Hoffman.

On Saturday night, November 17, 1900, in the city of Marion, Hoffman approached appellant, called him aside, and charged him with making various statements to Jessie Doty to the effect that his (Hoffman's) intentions toward her were not honorable. Appellant denied having made such statements. Hoffman said Jessie Doty was his informant, and asked Burton if he meant to say that Jessie Doty was a liar. Appellant insisted in his denial. He was then asked by Hoffman if he would make this denial in the presence of Jessie Doty. He said he would. According to the testimony of the

appellant, Hoffman informed the latter that if he denied making the statements in the presence of Jessie Doty there would be a corpse and a funeral procession, providing any one in Marion would bury him. Hoffman offered to bet appellant forty dollars that he would not deny having made the statement in the presence of Jessie Doty on the Monday following. Hoffman asked appellant where he would be on the following Monday, and was told that he would be in Marion, at Drake's restaurant. Appellant saw Jessie Doty on the next day, Sunday. She testified that he said: "We will meet in Marion Monday to settle this. You won't meet us there, will you? I am not afraid of what he (Hoffman) is going to do to me. I am only telling you from the respect I have for your family. Take a stranger's advice and not go to Marion, for you may witness something you will never forget."

Charles Doty testified that Burton told him he had fallen into trouble with Fred. Hoffman and was going to have a settlement on Monday; that Hoffman called him out to settle a certain question, and told him he would make a corpse out of him if he denied it to his (Doty's) daughter. Burton said he would give him that privilege if Hoffman was quicker than he was; that the question of who would be a corpse depended on who was the quicker.

Appellant stayed in the country over Sunday and came to Marion on Monday morning with Henry Doty on a load of oats, and brought with him a double-barreled shot-gun he had taken from the house of Charles Doty, sr. He also had a revolver on his person. On the way to town he wrote his sister's address and gave it to Henry Doty, who was driving the wagon, and told the latter that if he was killed to

hand it to Drake and have him telegraph to his sister.
On reaching Marion, about noon, appellant went to a
gunsmith's shop and left the revolver to be repaired.
He then took the shot-gun to Drake's restaurant and
laid it under the table.   Jessie Doty did not come to
Marion that day.   About four o'clock in the afternoon
Hoffman entered the door of the restaurant and im-
mediately the appellant drew the shot-gun and fired,
at a distance of about eighteen feet, the charge taking
effect in the head of Hoffman, causing death within a
short time.   The appellant testified that when Hoff-
man entered the restaurant he applied to appellant a
vile name, and made a motion of the right hand as
though to draw a revolver.

   *R. L. King*, county attorney, for The State.
   *Keller & Dean*, for appellant.

The opinion of the court was delivered by

   SMITH, J. :   In justification of the homicide the ap-
pellant relied wholly on the necessity for self-defense.
The state was permitted to show at the trial that
Jessie Doty was engaged to be married to Hoffman,
and that appellant knew it; that the latter sought
her company and invited her to attend certain enter-
tainments with him, and that he told her that Hoff-
man did not intend to marry her but would deceive
her.   This testimony was admitted on the theory
that Hoffman was an obstacle in the way of the con-
summation of appellant's desire to marry
Miss Doty, which fact furnished a mo-
tive for the killing.   The objection made by appellant
to this testimony is an attack on its weight rather
than its competency.   The conduct of the appellant
towards Miss Doty in inviting her to accompany him

1. Question of
motive.

to places of public amusement, and, failing in this, his attempt to prejudice her against Hoffman, were circumstances proper to go to the jury to aid in the discovery of a motive for the homicide. The testimony was not strong in the direction mentioned, but we cannot say that it was inadmissible.

The appellant took the stand as a witness in his own behalf, and testified that on the Saturday before the homicide, in a conversation with Hoffman, the latter said: "If you will stand up before Jessie Doty's face and tell us you didn't tell her that, there will be a corpse and a funeral procession, if you can get anybody to bury you here in Marion."

**2. Testimony stricken out.**

Further along the accused testified that when he fired the fatal shot he thought his life was in danger; that when Hoffman entered the restaurant he made a motion of his right hand as if to draw a revolver; that he put all the circumstances that had happened together and couldn't see how he could avoid taking Hoffman's life; that he considered and weighed the conversations held between them and came to the conclusion that Hoffman intended to kill him. The following questions, and the action of the court thereon, appear in the record:

"Ques. Mr. Burton, at any time were any other threats made by Fred. Hoffman conveyed to you? Ans. At any time?

"Q. Prior to that time. A. Yes, sir.

"Q. When were they conveyed to you? A. Saturday evening. (Counsel for the state objects to the witness stating that threats were conveyed to him as incompetent and immaterial.)

"By the court: Sustained. (To which ruling the defendant excepts.)

"Q. I will ask you if you was told that Fred. Hoff-

The State v. Burton.

man made a statement at that cake-walk that if he could find you he would do you up ?   (Objected to by the state as incompetent.)

"By the court : At this time the objection is sustained.   (The defendant excepts.)"

It appears that the first question propounded was in fact answered by the witness, but immediately afterward an objection was made by the state that it was incompetent and immaterial, and the court sustained the objection on those grounds.   The court instructed the jury as follows :

"Any evidence which has been admitted by the court should be considered by you in making up your verdict ; and when any evidence heard by you has been afterwards struck out by the court, you should absolutely and entirely disregard and give it no consideration.   Your verdict should be based alone upon the evidence which the court has permitted to stand, and upon the law as stated to you in these instructions."

It is quite apparent that the court did not intend that the answer of the witness should be considered by the jury, and we regard it as having been stricken out.

It cannot be said in this case that the evidence of justification on the ground of self-defense, taking the testimony of appellant as true, did not raise a doubt 4. Threats by deceased. as to whether the accused, when he fired the shot, was in apparent danger of great bodily harm.   He had a right to have his testimony weighed by the jury.   (*State v. Cushing*, 14 Wash. 527, 45 Pac. 145, 53 Am. St. Rep. 883.)   The defendant was justified in acting upon the facts as they appeared to him, and is not to be judged by the facts as they really existed.   (*The State v. Howard*, 14 Kan. 173.) The "apparency" of the danger to the accused would

be greatly affected by his knowledge of previous threats made against him by the deceased. It has uniformly been held that communicated threats against the prisoner, made a short time before the commission of the homicide, showing a revengeful spirit and determination to do him violence, are admissible. (*Miles Wilson v. The State*, 30 Fla. 234, 11 South. 556, 17 L. R. A. 654, and note.)

The court refused to permit the defendant to answer the following questions :

"Q. I will ask you if, at the time of this tragedy, you had ascertained and knew the reputation of Fred. Hoffman for being a violent and turbulent man, and for carrying a gun?

"Q. I will ask you, Mr. Burton, if you knew what Fred. Hoffman's reputation was at the time of the tragedy as a violent and turbulent man?"

We understand from these questions that, had defendant been permitted to answer them, he would have testified that he had been told by others that the deceased was a violent and turbulent man, and went about armed. The court sustained an objection to the first of the above questions on the ground of incompetency, and to the second because it was not the proper way to show the character of the deceased. Counsel for the state insists that the character of the person killed can only be attacked by evidence of his general reputation in the neighborhood, and cannot be proved by specific acts of violence or turbulence, or by isolated facts, nor by the individual opinions of those who are acquainted with him. We agree that this is the general rule, but we do not think it is applicable to the question involved in the objection to the testimony sought to be drawn out by the two questions above.

If the defendant was justified in acting on the ap-

3. Character and reputation of deceased.

pearances presented at the time of the killing, then the knowledge he had theretofore gained concerning the violent and dangerous character of the deceased tended to show his state of mind and his good faith in the belief of his imminent danger when he fired the fatal shot.   The effect on defendant's mind would be the same whether he gained his information of the dangerous character of the deceased from his general reputation in the community or by personal observation of specific acts, or from persons who had knowledge of particular traits, but who knew nothing of the general reputation of the man.   If defendant knew that deceased was a dangerous man, the influence of that knowledge on his conduct at the time of the killing could hardly be said to differ in whatever manner the information was derived, by hearsay or otherwise, and the same whether the fact was known by the community generally or not.

In the case of *State v. Lull*, 48 Vt. 581, 586, 11 L. R. A. 75, a prison-keeper was indicted for assault and battery on a prisoner.   The latter had a hammer in his hand and appeared nervous and excited, though he made no attempt to strike, but the keeper expected and feared a blow from him.   It was held that the accused might show that the sheriff who committed the prisoner informed him that he was dangerous and desperate.   The court said :

"We think that the court erred in excluding the testimony offered to be shown by Mr. Tripp as to what he told the respondent at the time he delivered Kefoe to him at the state prison in respect to his being a violent and desperate man.   It was an offer to show that Tripp told the respondent what the character of Kefoe was in respect to his being a violent and desperate man.   The form of the words used is not so material as the idea conveyed.   This evidence we think was fairly within the rule that the court laid

39—63 KAN.

down as governing the kind of testimony that was admissible, not particular acts of violence, but the character of the man in that respect. Such evidence would be material in determining how far the respondent was justified in inflicting the blow which he did, taken in connection with the surrounding circumstances and the evidence exhibited by Kefoe of an intention at the time to make an attack upon the respondent; and such evidence is always admissible as bearing upon the question as to whether a respondent had good reason to fear an attack upon himself, and acted in self-defense." (See, also, *People v. Powell*, 87 Cal. 348, 25 Pac. 481, 11 L. R. A. 75.)

The judgment of the court below will be reversed and a new trial ordered.

JOHNSTON, GREENE. ELLIS, JJ., concurring.