No. 38,292

THE STATE OF KANSAS, *Appellee*, v. CORNELIUS THOMAS HOCKETT, *Appellant*.

(238 P. 2d 539)

Opinion filed December 8, 1951.

*Joseph H. McDowell,* of Kansas City, argued the cause, and *James J. Lysaught,* also of Kansas City, was with him on the briefs for the appellant.

*Harold H. Harding,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, *Willis R. McQueary,* assistant attorney general, and *Tudor M. Nellor* and *J. Roy Holliday,* assistant county attorneys, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Defendant (appellant) was tried on an information containing four counts growing out of a robbery. Under the first count he was charged with robbery in the first degree and in counts

2, 3 and 4 with assault with intent to kill. The jury found defendant guilty as charged; his motion for a new trial was denied and judgment rendered on the verdict. Defendant appeals specifying that the court erred in instructing the jury; that the verdict is contrary to the law and the evidence; and that there was misconduct on the part of the jury.

The facts may be summarized as follows: On August 8, 1949, defendant went to the Shaw Jewelry and Loan Company in Kansas City and obtained a loan from its owner, J. I. Allen. Upon completion of the loan proceedings, defendant purchased a shotgun from Harry Becker, a clerk for the company. He then left the store, went to an open space in Kansas City near the viaduct where he tested the gun by firing it, and approximately fifteen minutes later returned to the store and complained to Becker that the gun did not work and was no good. While the clerk Becker was examining the gun, defendant grabbed another shotgun from behind the counter and attempted to load that gun at which time the clerk Becker struggled with defendant over the gun. During the struggle, Becker struck the gun which defendant was attempting to load six or seven times. Defendant ran from the store, turned around and fired several shots which struck Becker, knocking him to the ground. In his attempted get-away, defendant turned and shot at two police officers, Davis and Cox, who had been called to the scene and were pursuing him, the blast of defendant's gun breaking the window of the police car. Defendant was shot in the leg and taken into custody.

On August 11, 1949, an information was filed charging defendant with robbery in the first degree and three grounds of assault with intent to kill. Thereafter an application for a sanity hearing was filed by defendant and on August 15 a medical commission found defendant to be insane and he was committed to the State Asylum for the Dangerous Insane at Larned for safekeeping and treatment, to be returned to the district court of Wyandotte County for trial on his recovery.

On July 14, 1950, defendant was released from Larned State Hospital after it was determined that he had been restored to capacity and he was delivered to the sheriff of Wyandotte County and confined pending trial on the mentioned information. While awaiting trial, defendant's counsel filed an application in the probate court of Wyandotte County seeking to have defendant declared insane and committed to a veteran's hospital for treatment. A com-

mission was appointed by the probate court and it was found that defendant was insane and he was ordered committed to the veteran's hospital for treatment. The county attorney was informed that defendant's mental condition was once again a matter of dispute and for that reason he applied to the district court of Wyandotte County for appointment of another medical commission to examine defendant. Said commission on August 17, 1950, found that defendant was sane and competent to stand trial for the offense charged. On September 27, 1950, after trial in the district court, defendant was found guilty by the jury as hereinabove stated.

Defendant first contends that it was mandatory upon the trial court in view of the evidence to have instructed the jury on lesser included offenses of robbery in the first degree. We cannot agree with defendant's contention. The record clearly establishes that defendant grabbed a shotgun and turned around in the presence of Becker, while in the act of loading the gun, and that Becker in fear struggled with defendant in an attempt to keep him from loading the gun and forcibly taking it from the store. There can be no question but that Becker was placed in fear of bodily harm, that force was used against him to take possession of the gun, and that immediately after defendant forcibly obtained possession and loaded the gun, he started to and did fire at Becker, the pellets from the gun penetrating his leg and arm. It is the general rule of law in this state that a robbery may be committed by feloniously taking property from the possession of another either against his will by violence to his person, or by putting him in fear of some immediate injury to his person. (*The State v. Smith,* 113 Kan. 737, 216 Pac. 302). The evidence clearly meets all the requirements to sustain a conviction of robbery in the first degree.

The matter of instructing on lesser offenses as disclosed by the record in the instant case, was well within the sound rule of law which clearly stipulates that the trial court shall not instruct on lesser offenses which are not naturally or reasonably supported by the evidence. In *The State v. Clough,* 70 Kan. 510, 79 Pac. 117, this court stated:

". . . it is not error for the trial court to omit instructing the jury as to any one, or all, of such lower degrees of crime included in the charge, when the evidence tends to establish the highest degree of crime charged and does not tend to establish guilt of any lower degree of crime included therein."

See also *State v. Hardisty,* 121 Kan. 576, 249 Pac. 617. In the instant case the evidence did not clearly require the court to instruct on any lower degree of the crime. On the contrary, it clearly established the guilt of defendant of commission of the offense of robbery in the first degree.

Defendant in support of his contention relies on the cases of *State v. Phelps,* 151 Kan. 199, 97 P. 2d 1105, and *State v. Gloyd,* 148 Kan. 706, 84 P. 2d 966. In each of these cases there was substantial evidence which would warrant and support an instruction on lesser included offenses and under such conditions it was the duty of the court to so instruct. However, this was not the case here. At the close of the evidence, defendant's counsel stated in response to inquiry of the court as to whether he had any requested instructions:

"We should have an instruction not only on robbery in the three degrees, but also on larceny. Because there is a difference on larceny and robbery. Well, I guess we had better leave that out."

And again, counsel for defendant in the course of his argument on his motion for new trial stated:

". . . and while counsel for the defendant withdrew our request for a lesser offense instruction, we still think it was the Court's duty to give such instruction on his own motion."

Later counsel for defendant stated:

"Now, about lesser offenses: We asked for an instruction on lesser offenses and then, if the Court will remember, we sort of withdrew our request. Because we felt there was no doubt about the outcome of this case. . . ."

Defendant's contention at this stage of the proceedings that it was the duty of the trial court to instruct on lesser offenses even though he withdrew his request for such instruction, is wholly untenable. Here defendant admits that he withdrew his request for instructions on lesser included offenses in the hope that he might secure an acquittal for defendant if the evidence failed to prove the greater offense of robbery in the first degree. A duty rests upon counsel for defendant in the trial of a criminal action to aid and not to ambush the court, and consequently instructions should be requested covering all lesser degrees or lesser crimes involved in the main charge which defendant desires to be considered. Generally, a failure to make a request waives error in failing to instruct, and, generally, error in failing to instruct or in giving a wrong instruction upon lesser degrees or offenses works no prejudice when the defendant is convicted upon satisfactory evidence of a higher

charge under proper instructions relating to it. (*State v. Winters,* 81 Kan. 414, 105 Pac. 516; *State v. Willhite,* 161 Kan. 113, 166 P. 2d 562). We are unable to find that defendant was prejudiced by failure of the court to instruct on lesser included offenses.

In the instant case the court is of the opinion that the evidence does not clearly support the theory of the lower degree of the offense charged and therefore, that it was not the imperative duty of the court, in view of the record in this case, to instruct thereon.

Defendant next contends that the verdict is contrary to law and the evidence predicated on the theory that evidence was introduced fairly tending to prove insanity, both presently and at the time of commission of the offense; that a continued presumption of insanity was raised thereby; and that there was no competent proof on the part of the state to rebut such evidence and presumption. Without extending this opinion by relating testimony of lay witnesses and defendant's doctors regarding the sanity of defendant, suffice it to say there was ample evidence on this issue to submit the question to the jury. The court instructed the jury on the issue of insanity to accord with the views expressed by this court in a long line of decisions extending from *State v. Nixon,* 32 Kan. 205, 4 Pac. 159, to *State v. McBride,* 170 Kan. 377, 226 P. 2d 246, and defendant takes no exception to the trial court's instruction on this point.

It is an elementary rule of law that the question of the insanity of accused at the time of the alleged commission of the offense is one to be determined by the jury upon the evidence introduced bearing upon such an issue (*State v. Eye,* 161 Kan. 69, 166 P. 2d 572; *State v. McBride,* supra). On the conflicting evidence submitted and on proper instructions from the court, the jury resolved that issue in favor of the state.

Defendant next contends that his motion for a new trial should have been sustained. The ground urged is that several jurors made affidavits stating it was openly discussed in the jury room during the deliberation of the jury that the defendant did not testify. The affidavits in which all concurred contained the following statement:

"It was discussed among the jurors why the defendant did not testify and it was more or less the opinion of everyone that it was better for him that he didn't, it was the opinion of some that he was probably not well educated and he was better off not to testify."

The court instructed the jury correctly that the fact defendant did not testify was not to be considered or construed by them in any manner as affecting the defendant's guilt or innocence in the case.

To hold that affidavits such as those filed in this case entitle defendant to a new trial would be to permit any juror to impeach the verdict to which he had agreed where the defendant did not testify. This rule might lead to an endless number of trials. It may be noted these jurors did not appear in court on the hearing on the motion for new trial and give specific information regarding the discussion in the jury room and at no place in any of the affidavits is it stated that any juror was influenced by the fact that reference was made to failure of defendant to testify. It must be remembered that it is the allowing of oneself to be influenced by the failure of defendant to testify, the taking into consideration of the failure, that is forbidden by the statute. (*State v. Taylor,* 140 Kan. 663, 38 P. 2d 680, and cases cited therein.)

The trial court after considering the proffered affidavits and argument in connection therewith, found nothing contained in the affidavits indicating that the jury gave any consideration or was influenced by the matters therein contained in arriving at its verdict, and this court is of the same opinion. It may be stated that not every act of misconduct on the part of the jury is ground for granting a new trial. If it be trivial or not such as to influence the jury, misconduct will not vitiate a verdict. (*State v. Stuart,* 129 Kan. 588, 283 Pac. 630.) A juror cannot be heard to impeach a verdict by saying that in the deliberation he or any other member of the jury took into consideration the matter of the defendant's having failed to testify in his own behalf when he was instructed not to do so. (*State v. Dye,* 148 Kan. 421, 83 P. 2d 113.)

Defendant's request for a declaratory judgment with reference to certain proceedings had in the probate court of Wyandotte County wherein defendant was involved is not within the issues of this case. Moreover, the question submitted has since become moot in this case and will be disregarded. This court has stated that in order to obtain an adjudication on any question of law under the declaratory judgment act, an actual controversy must exist, and when any legal question becomes moot, judicial action ceases. (*State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P. 2d 127.)

In view of what has been said, the judgment of the lower court is affirmed.