No. 39,610

In the Matter of the Estate of CORNELIUS THOMAS HOCKETT, Incompetent, THE STATE DEPARTMENT OF SOCIAL WELFARE OF KANSAS, *Appellant*, v. LILLIE HOCKETT, Guardian, *Appellee*.

(280 P. 2d 573)

Opinion filed March 5, 1955.

*Harold R. Fatzer*, Attorney General, *Hart Workman, Charles V. Hamm*,

*George C. Wingerson,* and *James S. Engle,* all of Topeka, were on the briefs for the appellant.

*Joseph McDowell,* of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This appeal involves the validity of a statutory claim for the maintenance, care and treatment of Cornelius Thomas Hockett, an incompetent person, at the Larned State Hospital filed November 22, 1952, by the State Department of Social Welfare of Kansas in the estate of Cornelius Thomas Hockett, an incompetent, in the probate court of Wyandotte County. The claim covers two periods of time: from August 18, 1949, to July 14, 1950, at 47⅗ weeks, at $5. per week, amounting to $236.43; and, from November 3, 1951, to September 30, 1952, 47⅗ weeks, at $12. per week, amounting to $569.14. The two claims aggregating $805.57. The incompetent's guardian, Lillie Hockett, filed a written defense to the petition, the pertinent portions of which read:

"1. That all the assets in this estate are disability payments from the Veterans Administration for service man's disability and are exempt from such claims as this one.

"2. That the ward herein was convicted on September 26, 1950, of assault with intent to kill and sentenced by the District Court of Wyandotte County, Kansas, Case No. 15934, to 10 to 21 years in prison and has been confined and serving said sentence since that date, and is not liable for his care and maintenance while serving such sentence."

( See opinion in *State v. Hockett,* 172 Kan. 1, 238 P. 2d 539, where the conviction was affirmed. )

The administrator of Veterans Affairs also filed a written defense upon the same grounds.

The probate court heard the claim and after due consideration allowed it for both periods of time and rendered judgment in favor of the State Department of Social Welfare against the estate of Cornelius Thomas Hockett, incompetent, for the sum of $805.57. The court directed the guardian to pay at that time $746.29, which represents payments for the period November 9, 1949, to July 14, 1950, and for the period from November 3, 1951, to September 30, 1952, and further ordered that the balance of the judgment, $59.28, representing a claim for the period of time from August 18, 1949, to November 9, 1949, which was the date of the appointment of the guardian, be not paid unless and until there be assets in the estate which are not exempt under Title 38 U. S. C. A., § 454a,

since all the assets of the estate are derived from funds from the Veterans Administration.

In due time the guardian filed her notice of appeal to the district court. There the case was tried upon a written agreed statement of facts which we quote or summarize, as follows:

"1. That Cornelius Thomas Hockett was charged with the crime of assault with intent to kill in an action filed in the District Court of Wyandotte County, Kansas, but that prior to the trial on said complaint, Cornelius Thomas Hockett was committed to the State Hospital for the Dangerous Insane at Larned, Kansas, on the 18th day of August, 1949, and he remained there until the 14th day of July, 1950, pursuant to the provisions of Section 62-1531, G. S. 1949.

"2. That Lillie Hockett was appointed by the Probate Court of Wyandotte County, Kansas, as guardian of the estate of Cornelius Thomas Hockett on November 9, 1949.

"3. That on the 26th day of September, 1950, following his return from the State Hospital for the Dangerous Insane, Cornelius Thomas Hockett was convicted of assault with intent to kill and was sentenced by the District Court of Wyandotte County, Kansas, to the State Penitentiary, and he was thereafter confined in the Penitentiary.

"4. That on the 25th day of September, 1951, the Probate Court of Leavenworth County, Kansas, made a finding that Cornelius Thomas Hockett was insane and made an Order committing him to the State Hospital for the Dangerous Insane, and on November 3, 1951, he entered the State Hospital for the Dangerous Insane at Larned, pursuant to the Probate Court's commitment, and that he remained in said institution and was in said institution on September 30, 1952.

"5. That the period of time of the first commitment of Cornelius Thomas Hockett to the State Hospital for the Dangerous Insane, namely, from August 18, 1949, until July 14, 1950, is 47⅔ weeks, and that the period of time for the second commitment of Cornelius Thomas Hockett to the State Hospital for the Dangerous Insane at Larned, namely from November 3, 1951, until September 30, 1952, was 47¾ weeks.

"6. That no payment has been made for the care, maintenance, and treatment of Cornelius Thomas Hockett for the above-named periods of time to the State Department of Social Welfare of Kansas."

Attached to this statement as Exhibit A was a copy of the guardian's last annual account which showed a balance on hand of $2,951.

After a hearing in the district court and the submission of briefs by counsel the court approved the judgment of the probate court in all particulars except one. With respect to that the court made a finding as follows:

"1. On the point in issue, that is, 'Whether or not the patient in the state hospital for the dangerous insane at Larned, Kansas, subsequent to July 1, 1951, is liable under sections 59-2006, 2006a, G. S. '51 supplement.' The

court finds generally in favor of the guardian, Lillie Hockett, *on the theory that the enforced confinement of the incompetent was brought about by the authorities of the Kansas State Penitentiary and he was, by the authorities, transported to the Larned State Hospital without any authority or consent on the part of the guardian, Lillie Hockett.*" (Emphasis ours.)

and on that point rendered judgment as follows:

"IT IS FURTHER ORDERED BY THE COURT, That that portion of the judgment in the Probate Court of Wyandotte County approving the claim of the State Department of Social Welfare of Kansas for the period after July 1, 1951, be and is reversed and set aside."

From this adverse ruling the State Department of Social Welfare has appealed. The sole question presented here is the correctness of the court's finding and judgment denying its claim for the maintenance, care and treatment of Cornelius Thomas Hockett, an incompetent person, for the period from November 3, 1951, to September 30, 1952, 47 3/7 weeks, at $12. per week, amounting to $569.14.

With respect to that, counsel for appellant first contend there is no evidence in the record to sustain that portion of the court's finding, No. 1, which we have italicized. That contention is well taken. Paragraph 4 of the agreed statement of facts does not state who initiated the proceedings in the probate court of Leavenworth County, which made a finding that Hockett was insane and made an order committing him to the state hospital for the dangerous insane. So far as the stipulated facts are concerned his guardian may have initiated that proceedings. Paragraph 2 of the agreed statement of facts discloses that Lillie Hockett was appointed only "as guardian of the estate". She was not appointed guardian of the person. We are cited to no statute of this state, and our own research discloses none, which requires the guardian of the estate of a person to have notice of the filing of a complaint of insanity in the probate court, or any requirement that she give her consent thereto. It may have been initiated by the warden or some other officer of the penitentiary. The pertinent portion of our statute, G. S. 1949, 76-2461, on that point reads:

"Whenever any person confined in the state penitentiary or the Kansas state industrial reformatory is in need of treatment for mental illness or a convulsive disorder the warden, or other person in charge, may take the necessary steps to have the prisoner admitted or committed to the state hospital for the dangerous insane in accordance with the provisions of law regarding the admission or commitment of other persons to state hospitals. The costs of admission or commitment as well as the transportation of the patient to the said hospital

shall be borne by the said penal institution. The prisoner shall be kept and maintained as in the case of other patients, and the time spent at the hospital shall be counted toward his sentence. When in the judgment of the medical superintendent a patient so admitted or committed is no longer in need of treatment at the said hospital and could be cared for at the penal institution from which he came, the superintendent shall notify the warden or other person in charge ten days prior to his return. Should the prisoner remain at the hospital after expiration of his term, he shall be subject to the same laws and rules and regulations as any other patient so admitted or committed to the Larned state hospital."

Under this section the warden of the penitentiary, after he discovered Hockett was in need of treatment for mental illness, was authorized, indeed it is made his duty, to initiate proceedings in the probate court to have the prisoner committed to the hospital for the dangerous insane. Mr. Hockett was not sent to the Larned State Hospital because he was a prisoner, he was sent there because he was adjudged to be insane. The warden of the penitentiary is given no authority to send a prisoner to Larned State Hospital and he did not do so. The probate court of Leavenworth County after a proper hearing made the order for Hockett to be sent to the Larned State Hospital for treatment. It is true the cost of the hearing in the probate court as well as the transportation of Mr. Hockett to the Larned State Hospital was to be paid by the state penitentiary, but after he was received at the hospital he was to be kept and maintained in the hospital as other patients. This means, of course, the same as patients who were not prisoners but who had been adjudged insane. There is no contention either in the probate court or in the district court that the commitment of Hockett to the Larned State Hospital was illegal or improper in any way. The reason given by the court for denying appellant's claim for the maintenance of Hockett in the Larned State Hospital is not justified by the facts stipulated, nor by the law applicable thereto.

Sections 59-2006 and 59-2006a of the 1951 and 1953 Supp. to the General Statutes of 1949 are parts of ch. 340, L. 1951, which became effective July 1, 1951. Sec. 59-2006 was an amendment of the section of the same number in our General Statutes of 1949, the pertinent portions of which read:

"The following shall be bound by law to support persons committed to or received as patients at the state hospitals, . . . Spouses, parents and children. Payment for the maintenance, care and treatment of any patient shall be paid quarterly by said patient, by the guardian of his estate, or by

any person bound by law to support him. The state department of social welfare may recover the sum of twelve dollars ($12) per week as compensation for the maintenance, care, and treatment of a patient in a state hospital, from such patient when no legal disability exists, from the estate of such person, or from any person bound by law to support such person."

Sec. 3 of the act, now § 59-2006a of the above supplement, reads:

"The provisions of this act shall extend to and include patients in any hospital for the dangerous insane."

The State Department of Social Welfare of Kansas has the supervision of all the Kansas State Hospitals. Our penal institutions, including the state penitentiary, are under the jurisdiction of the State Board of Administration and appropriations are made accordingly. It is to be noted that G. S. 1949, 76-2461, above quoted, does not require the state penitentiary or the State Board of Administration to pay for the keep of a prisoner who is found to be insane and who is committed by the probate court to the state hospital for the dangerous insane. Such a prisoner so committed "shall be kept and maintained as in the case of other patients". If there ever was any question about that, what is now § 59-2006 and 59-2006a, *supra,* make it clear that the State Department of Social Welfare may recover the cost of such maintenance, care and treatment. They also fix the price which may be recovered, and clearly extend the provision to include any patient in any hospital for the dangerous insane.

We have examined the authorities from other states cited by counsel and find none of them to be in point for the reason that their statutory or constitutional provisions differ substantially from our own.

The result is that the judgment of the trial court should be reversed with directions to enter an order affirming the judgment of the probate court in all respects. It is so ordered.