No. 39,935

STATE OF KANSAS, *Appellee,* v. ODIST GRAY, *Appellant.*

(292 P. 2d 698)

Opinion filed January 28, 1956.

*A. L. Foster,* of Parsons, argued the cause, and was on the briefs for the appellant.

*Wm. K. Ong,* Labette county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, and *Roy S. Bennett, Jr.,* Labette county assistant attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Odist Gray was tried on an information charging murder in the first degree. The jury returned a verdict finding him guilty of murder in the second degree. His motion for a new trial was overruled and in due time he perfected his appeal to this court.

The information against the defendant was filed on February 15, 1955, and charged an offense occurring on December 6, 1954. On March 11, 1955, the state filed its motion to endorse the name of one witness and on March 15, 1955, filed another motion to endorse the names of two other witnesses. Before the trial, which commenced on March 16, 1955, the state presented these motions and the defendant objected to the belated endorsement. The trial court overruled the objections and permitted the names to be endorsed. The defendant then moved for a continuance, which was denied and the trial proceeded.

For present purposes it may be said that the state's evidence, which included dying declarations of the deceased, tended to show that the defendant had shot his wife with a .38 revolver. Defendant's testimony tended to prove that he was 49 years of age and weighed 150 pounds and that his wife was 53 years of age and

weighed about 200 pounds; that he came home about 6 P. M. on December 6, 1954, and, ignoring intervening events, was sitting in the living room and saw his wife who was in the dining room, approaching him with a .38 pistol in her right hand; that he rushed over to her to take the gun and in the struggle for it the gun was discharged, and that later she told her father, who was an aged man, sitting in the living room, that she had been shot. We need not here detail later events as the result of which police were called, and the wife taken to the hospital, where she died, and the defendant was taken to the county jail. During the course of his testimony, the defendant testified that on previous occasions his wife had threatened to kill him and on one occasion had shot at him with a .25 revolver, and that on occasions they had quarreled about her friends. By way of rebuttal the state called a witness who was asked if she knew the reputation of the deceased as a peaceful, law-abiding citizen of the community and answered that she did but on objection of the defendant that deceased's reputation was not an issue no answer was given. A conference between court and counsel was had out of the presence of the jury, and thereafter the trial was resumed, the objection sustained and the witness was then asked as to her acquaintance with the deceased and as to whether the deceased was a quarrelsome and troublesome person, and over objection of the defendant that she was giving a personal opinion, was permitted to answer in the negative. The state also called the minister of a named church who testified he had known the deceased for eight or nine years and that she was a member of his church. He was then asked "From your acquaintance with the deceased, Blanche Gray, would you say that she was a quarrelsome or troublesome person?" and over objection of the defendant that the evidence was incompetent, irrelevant and immaterial and not proper rebuttal, was permitted to give an answer in the negative. At least five other witnesses were asked like questions and over objection were permitted to give answers in the negative.

At the conclusion of the evidence the trial court instructed the jury at length, the defendant objecting to instruction 35, pertaining to evidence as to the character of the deceased.

As has been stated the jury returned a verdict of murder in the second degree. The defendant's motion for a new trial, which sufficiently set forth the matters later discussed, was denied and the defendant was sentenced to confinement in the state penitentiary

for a term of twenty-five years. An appeal was promptly perfected to this court.

The specifications of error cover alleged error: 1. In permitting the state's witnesses, on rebuttal, to express their personal opinions as to whether the deceased was quarrelsome and troublesome, when her reputation had not been attacked and had not been put in issue and when her dying declarations, positively naming accused as her assailant, were properly a part of the state's evidence; 2. In admitting evidence which was incompetent, hearsay and prejudicial to the defendant; 3. In giving instruction No. 35 to the jury; 4. In permitting the endorsement of names of additional witnesses on the information and permitting those witnesses to testify; 5. In overruling defendant's motion for a new trial; and 6. In rendering judgment against and pronouncing sentence on the defendant. As far as is necessary these specifications will be discussed in the order stated.

A considerable portion of appellant's brief dealing with his first and second contentions is predicated on an assumption that in his testimony he had not attacked the character of his deceased wife as to her being quarrelsome, turbulent and troublesome, and that the state, in rebuttal, could not show she did not possess such traits in the way it did. We do not find it necessary to make an extended discussion of all the facets of the problem as to showing the character of the deceased. The rule is that on a trial for murder, the defendant, after laying a proper foundation by evidence tending to show that in committing the offense he acted in self-defense, may introduce evidence of the turbulent and quarrelsome character of the deceased, a rule recognized or followed in this state. See *The State v. Burton,* 63 Kan. 602, 66 Pac. 633; *The State v. Spangler,* 64 Kan. 661, 68 Pac. 39; *The State v. Allen,* 107 Kan. 407, 191 Pac. 476; and the cases cited therein. See also 40 C. J. S. 1138, *et seq.,* and 26 Am. Jur. 389, *et seq.*

In 40 C. J. S. 1226, it is said the general rule is that evidence of the character of the deceased must be confined to his general reputation in the community within a reasonable time of the alleged crime and evidence of particular acts of violence or lawlessness is inadmissible unless directly connected with the crime charged, and that the state may introduce competent evidence in rebuttal. Certainly the appellant here cannot complain of his own testimony. Included in it was an attack on the character of the deceased as

being quarrelsome and turbulent. That evidence was subject to rebuttal by the state, and the decisive question is whether the rebuttal evidence was proper and competent and should have been received.

As has been pointed out above the state in rebuttal did not seek to show the character of the deceased as to being quarrelsome and turbulent by evidence of her general reputation but it asked for and the court permitted the witnesses to give their personal opinions as to those traits.

The appellant contends that the trial court erred in admitting the evidence just mentioned and that it was highly prejudicial to him. In its brief, the state dwells at length on its right to rebut the defendant's evidence as to the character or reputation of the deceased as being quarrelsome, turbulent and troublesome and cites many authorities some of which are mentioned herein. In view of what has been said above, we need not further notice its right to introduce rebutting evidence. The state, however, does not treat the type of evidence proper in rebuttal and cites no authority that the personal opinions of witnesses are admissible.

Certain observations are here deemed proper. One is that the question as to whether opinion evidence is properly admitted is not limited to homicide cases and our discussion need not be so confined nor is it limited to whether the evidence is offered in defense or in rebuttal. The other is that we need draw no technical distinctions between evidence of character and of reputation, the terms being used much of the time as meaning one and the same thing. As was said in *The State v. Tawney,* 78 Kan. 855, 99 Pac. 268: "The distinction between character and reputation is not easily understood by the common run of witnesses, and the terms are not infrequently used without discrimination. . . . In at least two decisions of this court the expression 'character for truth and veracity' has been used synonymously with reputation for truth and veracity." (citing cases)

An exhaustive review will not be made of our many decisions and of other authorities wherein the question for decision has been discussed. Those hereafter mentioned are deemed sufficient.

In *The State v. Johnson,* 40 Kan. 266, 19 Pac. 749, the prosecution was for burglary and larceny. Among the complaints considered was that witnesses for the defendant had stated the general reputation of another witness was bad but an objection was sus-

tained to an inquiry as to whether from that general reputation the witness would give him full faith and credit upon his oath in a court of justice. After stating the question was competent and should have been allowed, this court said:

"The witness must not testify to particular facts, nor to personal knowlege of the individual sought to be impeached, but should confine himself to the general reputation; and if he knows that to be bad, the inquiry should then be permitted whether from that reputation he would believe the person whose reputation is assailed, under oath. While the propriety of this practice has been questioned, (1 Greenl. Ev., § 461,) the authorities are well-nigh unanimous in holding the question to be proper." (citing many authorities)

In *Spain v. Rakestraw*, 79 Kan. 758, 101 Pac. 466, the action was for damages for assault and battery and the question of proof of character or reputation was involved. Although it was held, under the facts, that there was no error, this court said:

"There was a time when the personal knowledge and opinion of a witness concerning the character of one with whom he was acquainted were regarded as proper evidence, but in *Reg. v. James Rowton*, 10 Cox Cr. Cas. [Eng.] 25, this practice was disapproved in England. In this country the weight of authority in such cases is that the question should be restricted to general reputation concerning the particular quality involved in the issue, and this is the practice approved in *The State v. Johnson*, 40 Kan. 266, 19 Pac. 749. A history of the judicial consideration of this subject is given in volume 2 of Wigmore on Evidence, sections 1605 to 1625, inclusive, and in volume 3 of the same work, sections 1980 to 1986, inclusive. (See, also, Stephen's Hist. Crim. Law of Eng., pp. 449, 450.) The object sought by such testimony, whatever the form of the question, is to prove character (*The State v. Spangler*, 64 Kan. 661, 68 Pac. 39), but the proper method is, it seems, to arrive at this by showing the general reputation of the person rather than the personal knowledge of the witness."

In *The State v. Kirby*, 62 Kan. 436, 63 Pac. 752, this court considered an appeal from a conviction for murder. The defendant contended that the killing arose from the seduction of defendant's daughter by the deceased. Witnesses were called to testify as to the character of the daughter for chastity and virtue. In discussing the form of questions asked, it was said:

"When character is in issue, the law limits the inquiry to general character, and not to specific acts; not the estimate of a few, nor the opinion of a part of the community; but it can be shown only by common report, general reputation and opinion generally entertained of the party in the community where he lives."

In *The State v. Frederickson*, 81 Kan. 854, 106 Pac. 1061, the defendant had appealed from a conviction of manslaughter. At the

trial he had contended he shot the deceased in self-defense. Limits of space preclude extensive reference to the evidence of the state in rebuttal as to specific acts of the defendant to offset his evidence as to his having a good reputation as a careful, conscientious and faithful officer and as a peaceful, quiet and law-abiding citizen, and the comment of the court in deciding that such evidence was improper and prejudicial, reference being made to the opinion therefor. The conclusions of the court are well reflected in the syllabus reading:

"When the defendant in a criminal action undertakes to establish good character as an element of his defense to the charge he is limited in his proof to testimony regarding his general reputation for possessing the traits involved, in the community where he resides, and the state, in rebuttal, is limited to the same kind of testimony. Neither party may resort to specific instances of conduct demonstrative of character, nor to the private judgment or opinion of individuals, nor to any fact other than that of general reputation.

"In this case it is held that certain evidence in rebuttal, admitted in opposition to the rule stated, was prejudicial to the defendant to such an extent that he is entitled to a new trial."

The question of the state's evidence to rebut that of the defendant as to his having a good reputation for a particular trait was again before this court in *State v. Whiting*, 173 Kan. 711, 252 P. 2d 884. In denying the defendant's contention that the evidence introduced was improper, this court made reference to *The State v. Frederickson*, supra, holding that the state was limited to testimony regarding the defendant's general reputation for possession of the traits involved, and that we found no fault with that rule, but that it had not been violated.

Informative annotations on the admissibility of evidence as to the other's character and reputation for turbulence on the question of self-defense by one charged with assault or homicide may be found in 64 A. L. R. 1029, and on the right of the prosecution, in a homicide case, to introduce evidence in rebuttal to show good, quiet and peaceable character of deceased, may be found in 34 A. L. R. 2d 451. See also 40 C. J. S. 1138, *et seq.*, and 26 Am. Jur. 396.

In our opinion the trial court erred in permitting the state's witnesses to testify, giving their personal opinions, that the deceased was not a quarrelsome and troublesome person.

The next question then is, was that wrongful admission of the evidence prejudicially erroneous. Without detailing the evidence

offered by the state, it may be said that the only person present at the time, other than the defendant and the deceased, was deceased's father, who was an aged man who gave a vague, contradictory and inconclusive account of what happened. The state's principal proof consisted of dying declarations of the deceased to some three or four persons and those declarations were that her husband shot her. It does not appear that deceased told any witness of any of the details of the shooting nor how it occurred nor any of the circumstances leading up to or connected with the shooting. In view of the defense that the shooting occurred when the defendant attempted to wrest the gun from the deceased, it is apparent that the evidence complained of that deceased was not quarrelsome and troublesome must have been considered by the jury in determining the truth of the defense, and that it was prejudicial, and we conclude it was.

In view of our conclusions just stated, the action must be retried. For that reason, it is unnecessary that we discuss appellant's other specifications of error.

The judgment of the trial court is reversed and set aside and the cause is remanded for a new trial.