No. 45,784

State of Kansas, *Appellee,* v. James Edward Mason, *Appellant.*

(490 P. 2d 418)

Opinion filed November 6, 1971.

*Samuel J. Wilson,* of Kansas City, Kansas, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* chief deputy county attorney, argued the cause, and *Vern Miller,* attorney general, and *Frank D. Menghini,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: Appellant was convicted by a jury of murder in the second degree, as charged in the amended information, and was sentenced to confinement for a period of ten years. He appeals, alleging several trial errors.

The deceased, Richard Calhoun, was eighteen years old at the time of his death. He and the appellant had been acquainted for approximately two years, going back to a time when Calhoun had been a student in a trade school operated by the Economic Opportunity Foundation in which appellant was an instructor-supervisor. Their relationship at the school and afterwards was not a friendly one, being marred by several conflicts over school hours

and discipline, including one in which Calhoun was said to have displayed a knife and appellant sent him home from school. Calhoun was eventually discharged from the school and apparently blamed appellant for his dismissal.

Appellant testified to subsequent encounters with Calhoun and various of his friends during which appellant felt apprehensive. One of these was about a week before Calhoun's death, at which time both Calhoun and a friend showed appellant pistols, one of which appellant offered to buy. The fatal incident was precipitated by the theft that night of a tape player from appellant's car; appellant was led to believe Calhoun was responsible for the theft.

Their last encounter occurred about 8:00 or 9:00 p. m. on March 8, 1968, in a parking lot near a tavern in Kansas City. Appellant had observed a car pull into the lot and had recognized its passengers as friends of Calhoun. He followed in his truck seeking, he said, to interrogate them about his tape player. When both vehicles stopped he observed Calhoun alight from the driver's seat of the car, and he similarly alit from the truck.

Appellant had with him in the truck a Winchester .30-30 carbine which he had purchased about a month before, and which he had pawned about two weeks before. He had gotten it out of pawn about 7:00 o'clock that evening, and purchased shells for it and loaded it for the first time shortly before the shooting.

As to the brief encounter in the parking lot, we have two versions. Two young friends of Calhoun testified that appellant came running up with the rifle in hand, demanding to know where his tape player was; that Calhoun denied knowledge of it, whereupon appellant shot him from a distance of as much as six or seven feet; and that appellant then told them to get out, take Calhoun with them, and not come back.

Appellant's version was that, upon seeing Calhoun he reached into the truck and picked up the rifle—only because he didn't trust Calhoun and wanted to scare him; that he operated the rifle's lever action as he approached—again only to scare him, since he thought he had unloaded it; that Calhoun said he had the tape player and dared him to do something about it; and that Calhoun made arm motions leading appellant to believe he might have a pistol concealed in his belt under the bloused shirt or sweater he was wearing. Appellant insisted in both a pretrial statement and in his testimony that he poked Calhoun at the waist with the rifle

to see if there would be a metallic clink indicating the presence of a pistol, and that as he did so the rifle discharged accidentally. He steadfastly denied pulling the trigger.

The ensuing events are immaterial here. They include appellant's pawning of the gun the next morning under an alias, his arrest and the giving of a statement which is not in issue, and the death of Calhoun from the gunshot wound after surgery.

As may be seen, appellant's defense was an uncertain mixture of accident and self-defense. His first allegation of error relates to the exclusion of testimony which he characterizes as dealing with the reputation and predilection for violence of the deceased, offered to support the latter theory.

There is no doubt that where a colorable claim of self-defense is made, evidence of the turbulent character of the deceased is proper and may be shown by evidence of his general reputation in the community. *State v. Gray,* 179 Kan. 133, 292 P. 2d 698; *State v. Long,* 103 Kan. 302, 175 Pac. 145. *Cf., State v. Johnson,* 185 Kan. 1, 340 P. 2d 373; *State v. Frederickson,* 81 Kan. 854, 106 Pac. 1061; *State v. Kirby,* 62 Kan. 436, 63 Pac. 752. Here, however, the evidence offered did not go to general reputation; what appellant sought to introduce was the testimony of a police juvenile officer showing a record of Calhoun's juvenile arrests, none of which resulted in a conviction or adjudication of miscreancy or delinquency. K. S. A. 60-446 has doubtless broadened the scope of evidence by which character may be proved by permitting proof of specific instances of a person's conduct, but that section is expressly subject to the limitation of 60-447. The latter in turn provides that, where a character trait is relevant, "evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible. . . ."

The upshot of it is that appellant could prove Calhoun's claimed violent character either by general reputation or by evidence of convictions. The offered evidence was neither, and was therefore properly rejected.

Appellant's other major contention is based on the trial court's failure to instruct the jury on first, second and third degree manslaughter. No complaint is made of the instructions actually given, which covered murder in the second degree, fourth degree man-

slaughter and justifiable homicide. Neither is there a contention that the state's evidence, if believed, was not wholly adequate to sustain the verdict returned.

The following discussion occurred prior to the instructions being given:

"THE COURT: It was my thought that that would take care of the matter if the jury should find that the killing was involuntary. Now, that was my reason for putting it there.

"MR. MENGHINI (county attorney): After his testimony this morning, I don't have any objection to the self-defense instruction.

"THE COURT: What about you, Mr. Fisette?

"MR. FISETTE (defense counsel): If Your Honor please, I think the instructions cover the situation as the Court has drawn the instructions, and we have no objection to the instructions as they now presently stand, and we feel that the defendant is entitled to the lesser crime—that of fourth-degree manslaughter—as the Court has instructed in its instructions."

This exchange renders apropos what we said in *State v. Hockett*, 172 Kan. 1, 4, 238 P. 2d 539:

"A duty rests upon counsel for defendant in the trial of a criminal action to aid and not to ambush the court, and consequently instructions should be requested covering all lesser degrees or lesser crimes involved in the main charge which defendant desires to be considered. Generally, a failure to make a request waives error in failing to instruct, and, generally, error in failing to instruct or in giving a wrong instruction upon lesser degrees or offenses works no prejudice when the defendant is convicted upon satisfactory evidence of a higher charge under proper instructions relating to it. (*State v. Winters*, 81 Kan. 414, 105 Pac. 516; *State v. Willhite*, 161 Kan. 113, 166 P. 2d 562.)"

It is true that a trial court may have a duty to instruct on lesser included offenses even in the absence of a request, but that duty arises only where the omitted instructions are "clearly required by the evidence" and "the jury might naturally and probably have convicted of a lesser degree or offense" if they had been given. *State v. Winters*, 81 Kan. 414, 421, 105 Pac. 516. (For an account of the judicial history of the "no request-no error" doctrine in this state see *State v. Phelps*, 151 Kan. 199, 97 P. 2d 1105.) Both second and third degree manslaughter under former K. S. A. 21-411 and 21-413 required that the killing be "in the heat of passion." No evidence was presented of the existence of that frenzied state of mind, as defined and explained in such cases as *State v. Roy*, 203 Kan. 606, 455 P. 2d 512; *State v. McDermott*, 202 Kan. 399, 449 P. 2d 545, cert. den. 396 U. S. 912, 24 L. Ed. 2d 187, 90 S. Ct. 226; *State v. Linville*, 148 Kan. 142, 79 P. 2d 869. Appellant's testimony

of accident wholly negated that element, while the state's evidence showed at most anger, which is insufficient under the cases cited.

The evidence might more plausibly be fitted into the structure of former K. S. A. 21-407, manslaughter in the first degree. *Cf., State v. Patterson,* 200 Kan. 176, 434 P. 2d 808; *State v. Severns,* 158 Kan. 453, 148 P. 2d 488; *State v. Merriweather,* 136 Kan. 337, 15 P. 2d 425. We cannot, however, go so far as to say the evidence "clearly required" such an instruction in the absence of a request. Defense counsel's actions here went beyond mere silence; he affirmatively approved the instructions given as covering all theories of the defense, including the lesser included offense of fourth degree manslaughter. We think this places him in the position of the defendants in *State v. Hockett,* supra, and *State v. Post,* 139 Kan. 345, 30 P. 2d 1089, *i. e.,* having made his election he must abide the result.

The county attorney's conduct at the time of final argument is also urged as error. The record reveals that on four occasions during the defendant's argument the county attorney objected to what he viewed as misstatements of the law or attempts to interject factual issues based on evidence which had been offered but excluded. Our examination of these objections fails to reveal any malicious purpose on the part of the county attorney or any foundation for a claim of prejudicial error. The same may be said of that portion of the county attorney's argument now urged as error but which was not objected to at the time. We believe it to have been within the legitimate bounds of oratory, even if it had been the subject of the necessary objection. Such matters are left to the discretion and control of the trial court in the absence of flagrant abuse or misconduct. See, *e. g., State v. McDermott,* supra; *State v. Wilson,* 188 Kan. 67, 360 P. 2d 1092; *State v. Wyman,* 198 Kan. 666, 426 P. 2d 26.

Finally, appellant claims it was error to admit into evidence over his objection a photograph of Calhoun taken just prior to autopsy. The objection was based in part on a claimed lack of identification, but largely on its claimed inflammatory nature.

As to the first point, the photograph was identified by the officer who took it. In addition, the physician who had performed emergency surgery on Calhoun positively identified his handiwork in the photograph, although he was not personally acquainted with Calhoun in his lifetime—no serious contention was made that the surgery had been performed on anyone other than Calhoun. We

believe it was sufficiently established that the photograph was of Calhoun.

We are hampered in assessing its alleged inflammatory nature by not having the photograph in the record. Its admissibility, however, is governed by the general principle recently reiterated in *State v. Booker*, 200 Kan. 166, 168, 434 P. 2d 801, cert. den. 391 U. S. 965, 20 L. Ed. 2d 879, 88 S. Ct. 2031:

"Even though gruesome, photographs properly identified, as representing physical objects which constitute a portion of a transaction which serve to unfold or explain it, may be exhibited in evidence whenever the transaction is under judicial investigation. (*State v. Zimmer*, 198 Kan. 479, 426 P. 2d 267, cert. den. 389 U. S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298; *State v. Turner*, 193 Kan. 189, 392 P. 2d 863; *State v. Stubbs*, 186 Kan. 266, 349 P. 2d 936, cert. den. 363 U. S. 852, 4 L. Ed. 2d 1734, 80 S. Ct. 1632; *State v. Spencer*, 186 Kan. 298, 349 P. 2d 920; *State v. King*, 111 Kan. 140, 206 Pac. 883; *State v. Sweet*, 101 Kan. 746, 168 Pac. 1112.)"

The photograph here would serve to identify the deceased and to demonstrate the nature and, more importantly, the location of the wound. To that extent it might even have served as some measure of corroboration of appellant's testimony about poking Calhoun at the waist to discover a possible pistol. In any event, whatever inflammatory characteristics it may have exhibited did not render it inadmissible under the quoted rule.

The appellant having failed to establish prejudicial error, the judgment is affirmed.

APPROVED BY THE COURT.